Pearson, J
 

 The act of 1840 ch. 28. sec. 4. enacts, that no gift, by one indebte.d, shall be hereafter taken and held to be fraudulent and void in law; property at the time fully sufficient and available for the satisfaction of all of his then creditors being retained by such donor.
 

 Avery interesting question, upon the construction of this statute, was decided in the Court below, and was ably argued in this Court. Are the debts for which the donor is bound, as surety, to be taken into the estimate, in ascertaining the amount of his indebtedness at the time
 
 *503
 
 of the gift, and if so, is the property which is owned by the principal to be taken into the estimate, in ascertaining whether such donor retained property, at the time, sufficient and available for the satisfaction of all his then creditors?
 

 We do not feel at liberty now to decide the question, because this case does not come within the operation of that statute. In Sept. 1826, one George L. Davidson being indebted to one Graham in an amount exceeding 03000, made a voluntary conveyance of the slaves for which this action is brought, to his son William L. Davidson. In 1829, Graham commenced a suit in Equity for the recovery of the debt. In January 1833, by an order in the cause, George L. and William L. Davidson executed a bond for the forth coming of the said slaves. The cause pended until 1839, when Graham obtained a decree for a large sum. Execution thereupon issued, and the defendant, as sheriff, took the slaves from the possession of William L. Davidson, and sold them in May 1840. In February 1833, William L. Davidson executed to the plaintiff a deed for the slaves, in trust for the payment of debts. And in September 1840, this action was commenced for seizing and selling the slaves.
 

 The statute was passed afterwards, and the question is, can it have any effect upon the rights of the parties in this case, or change the law, so far as they are concerned, from what it was, at the time their rights vested ? According to the reasoning in the opinion in
 
 Arnett
 
 v.
 
 Wanett,
 
 6 Ire. 41, by a proper construction of the statute, the word '‘hereafter” refers to the decisions of the Courts and not to gifts, and the Legislature intended to say, not only what the law should thereafter be, but what
 
 it had been before.
 
 If such was the intention, it is an excess of authority, and it is null and of no effect. The right to
 
 make
 
 laws is vested in the “General Assembly.” The right to
 
 decide
 
 what the law is and what it was is vested
 
 *504
 
 in the Supreme Court. The assumption of a right by the < legislative power” in December 1840, to instruct “the Supreme Judicial power,” how the law shall be “taken and held” to have been in 1826 or in May 1840, is an infringement of the distribution of powers made by our form of government, and a breach of the fundamental principle-set forth in the “bill of rights.” sec.
 
 4.
 
 “The •Legislative, Executive, and Supreme Judicial power, ought to be forever separate and distinct from each other.” It is settled, that the Legislature cannot pass any declaratory law or act declaring, what the law was before its passage, so as to give it any binding weight with the Courts. A retrospective statute, affecting or changing vested rights, is founded on unconstitutional principles and consequently void. 1
 
 Kent’s
 
 Com. 455, and the cases cited.
 

 If, as the case -was, before the act of 1840, Graham, as an existing creditor, had a right to treat the gift of his debtor as void, and to subject the slaves to the payment of his debt: If the defendant, as sheriff, had a right and was bound in discharge of his duty, to seize and sell the slaves : If the purchase at such sale acquired a valid title ; and if the plaintiff and William L. Davidson under • whom he claimed, had no title, as against such creditor, sheriff and purchaser: If such ions
 
 the law;
 
 and it was the intention of the act of 1840 to
 
 change the law,
 
 so as to di vest Graham of his rights — to make the defendant liable to this action — to deprive the purchaser of his title— and to give a right of action and the title to the plaintiff, when he had neither before — it was an attempt to violate vested rights, and to take the property of one citizen and ; give it to another, which this Court feels bound firmly to .resist. . A legislative act, which deprives one person of a right and vests it ifi another, is not “a law of the land" within the meaning'of the bill of rights, sec. 12. “No free man shall be deprived of his life, liberty, or property,
 
 *505
 
 but by the law of the land.”
 
 Hoke
 
 v.
 
 Henderson,
 
 4 Dev. 15.
 

 In
 
 Arnett
 
 v.
 
 Wanett,
 
 the first point was decisive of the case, and it was not necessary to decide, whether the case came within the operation of the statute. In treating of it, the opinion is confined to the inquiry, as to the: construction to be given to the word “hereafter.” The power of the legislature to pass an act affecting vested rights and title to property, by declaring how the law should be “taken and held” to have been, before the passage of the act, was not taken into consideration.
 

 As this case does not come within the operation of the act of 1840, the only inquiry is, what
 
 was the law
 
 at the time the right of the creditor attached and the property was taken and this action commenced. The gift of the debtor to the son was voluntary. The creditor had an existing debt ; and it is admitted,'that when he obtained his decree, and sued out execution, the debtor was insolvent, and there was no other property to which the creditor could have recourse, for the satisfaction of his debt. The matter was reduced to this. The donee must give up the property, for which he had paid nothing, or the creditor must lose a debt existing at the time of the gift. This is settled by the case of
 
 O’Daniel
 
 v.
 
 Crawford,
 
 4 Dev 197. That decision has been much discussed. We are entirely satisfied of its correctness, giving due consideration to the supposed expression of the opinion of the legislature. We believe the reasoning upon which it is founded is conclusive, and it has been cited and approved by repeated adjudications of this Court.
 
 Jones
 
 v.
 
 Young,
 
 1 Dev. & Bat. 352.
 
 Arnett
 
 v.
 
 Wanett,
 
 6 Ire. 41,
 
 Smith
 
 v.
 
 Reavis,
 
 7 Ire. 341. In 2
 
 Kent’s Com.
 
 442, that learned jurist says, “the very able decision of the Supreme Court of North Carolina in Dev. 1833 in
 
 O’Daniel
 
 v.
 
 Crawford,
 
 stands cut firmly opposed to this enervating infirmity. It has established, by argument and authority, resting on the soundest foundation, the rule, that no voluntary con
 
 *506
 
 veyance of property', even to a child, will be upheld tode
 
 feat
 
 an existing creditor.” By
 
 defeat
 
 he means to convey the idea, that satisfaction cannot be otherwise obtained. We add nothing to the reasoning or the authorities by which the law of that case is supported.
 

 The Judge erred in his instructions, that the gift was not fraudulent and void as against Graham, though Geo. L. Davidson had no property at the time Graham took out his execution.
 

 Per Curiam.
 

 Judgmeul reversed and a
 
 venire de novo.