STATE v. GEORGE ATKINSON and WILLIAM WHITFIELD.

*Larceny—Evidence.*

1. What is evidence, and whether there is any evidence to be submitted to the jury, is a question of law to be decided by the Court. What weight and effect should be given to evidence submitted to them, is a matter of fact to be decided by the jury.

2. The Court has the power to set aside the verdict of guilty when it is against the weight of evidence, or when there is no evidence.

3. If the evidence produced is so slight and inconclusive as that in no view of it, ought the jury reasonably to find a verdict of guilty, then there is no evidence which should be submitted to them.

4. Upon the facts stated in this case it is clear that there was evidence which should be submitted to the jury.

(*State* v. *White,* 89 N. C., 462; *State* v. *Patterson,* 78 N. C., 470; *State* v. *Crockett,* 82 N. C., 600; *State* v. *James,* 90 N. C., 702; *State* v. *Gaskins,* at this Term, cited and approved).

This was an indictment for LARCENY, tried at Spring Term, 1885, of the Superior Court for JOHNSTON county, before *Mac-Rae, Judge,* and a jury.

The jury returned a verdict of guilty against the defendants, and the Court gave judgment, from which they appealed.

The case is stated in the opinion of the Court.

*Attorney General* and *D. G. Fowle,* for the State.
*Messrs. Reade, Busbee & Busbee,* for defendants.

MERRIMON, J.   What is evidence, and whether or not there is any evidence to go to the jury in respect to an issue submitted to them, are questions exclusively for the decision of the Court. But if there is evidence—any evidence—to go to the jury, it is their province to determine its weight and effect, and whether or not it is sufficient to warrant them in rendering a verdict of guilty in a criminal action.   Of course, this does not imply that the Court would not have the power in a proper case, where there is a conflict of testimony, to set a verdict of guilty aside, as being manifestly against the weight of evidence.   If the evidence produced is so slight and inconclusive, as that in no view of it, could the jury reasonably render a verdict of guilty, then there is no evidence that ought to be submitted to them.   *State v. White*, 89 N. C., 462, and the cases there cited.

The question presented by the record is, was there evidence that ought to have been submitted to the jury?   If this question must be decided in the affirmative, then it was the province of the jury to determine its weight and sufficiency.   The ingenious argument of the counsel for the defendants, failed to satisfy us that there was no evidence.   We are of opinion, that taking all the facts and circumstances in evidence together, their natural bearing upon each other, the legitimate inferences that might reasonably be drawn from them, some of them in detail and from them as a whole, the verdict was not an unreasonable one, if the jury believed the evidence, and it must be taken that they did. There was strong evidence going to show that the prosecutor's cotton was stolen by some person.   Two or three witnesses testified that it was at the place designated by them, and that it disappeared in a clandestine way, without the knowledge or sanction of the owner.   It was suggested on the argument, that it might have been shipped with other cotton by mistake.   There was not the slightest evidence to warrant such a supposition or inference. While it was in the range of possibility that it might have been, this was extremely improbable, especially in view of the total absence of evidence tending to show such mistake.   The suggestion rests upon the merest conjecture.

The defendants had knowledge of the cotton, particularly the defendant Whitfield, he weighed, marked, and worked more or less with it, and both worked about it shortly before it was missed, and before they were discharged from such service by their employer, because "they did not attend to his business." The larceny was committed in November. Very shortly after the defendants were so discharged, at night, perhaps as late as nine o'clock at night, the defendant Atkinson, in the immediate neighborhood of the cotton, asked the witness Holland, who had a horse and cart, if he wanted to make some money. On receiving an affirmative reply, he said he wanted some cotton moved. The witness, knowing that he had not made any, asked where? The reply was "up here," pointing up the way towards Hyman's platform, where the cotton of the prosecutor was, and he further said, he had two bales—half the number missed. The manner and circumstances of this conversation, manifestly impressed the witness with the strong belief that this defendant had not come honestly by the two bales of cotton he desired to have removed; for he said he could not remove it—that he could not afford to get himself into trouble, &c. This defendant did not, so far as appears, resent at all the implied imputation that he had stolen, or was about to steal, the cotton, nor did he offer any explanation in respect to it, to satisfy the witness that he would encounter no danger if he would remove it for him. The first impulse of an innocent man, would have been to deny and resent such an imputation; at all events, he would have made some explanation—the occasion made it necessary. But he said nothing. This was an admission, by strong implication, that he had stolen two bales of cotton at Hyman's platform, an important fact to be taken in connection with the other evidence.

After the disappearance of the cotton had been talked of in the neighborhood, this defendant said to another witness, "*Whitfield*" (the other defendant) "was a fool for leaving, that he had a place for him to stay, until Doane Thomas came back from Raleigh, and then we are going to see David and stop the thing."

He did not say what "thing," but it is reasonable to infer that he had reference to the charge of larceny against Whitfield and himself, in the absence of explanation. The declaration laid the ground for the not unreasonable inference, in view of other evidence, that the defendants needed to have stopped something that affected them adversely in common. What thing? In the absence of explanation, the accusation against them in respect to the cotton.

The defendant Whitfield was arrested very shortly after he was discharged from service by the witness Hyman, at an obscure place a mile from the main road; he had his clothes with him, and on seeing the officer, without knowing that he had a warrant directing his arrest, so far as appears, he fled from the house. Why did he flee? So far as appears, the only charge against him was that in respect to the cotton alleged to be stolen. That he so fled was a strong circumstance against him—indeed, it raised a presumption of guilt against him. After this defendant was arrested, himself, the officer and the witness Hyman rode together in a buggy to town. On the way, Hyman said to him, that he was surprised "that he was guilty." He did not deny his guilt; he only said, "Richmond Smith was mighty smart, and if he didn't watch, he'd be in his condition and fix." That he did not deny that he was guilty, was evidence against him, and stronger, as he seemed to complain against some one, not upon the ground that he was innocent, but because that person had said or done something against him in respect to the charge upon which he was arrested. It might be so inferred. What this defendant said to the witness Holland, taken in connection with the other evidence, was very significant, and went strongly to make evidence against him. That witness testified: "I saw Whitfield," (this was shortly after the latter had been discharged). "He came by my house. I asked him the news. He said, nothing, only he was discharged. I said, you've lost a pretty good job. He said, 'Never mind. I've got the money just the same.'"

An inference by no means unreasonable, to be drawn from this declaration taken in connection with the other evidence, was that he had lost nothing by being discharged, because he had gotten the cotton. How did he get "the money just the same"? Such a combination of facts and circumstances, and the reasonable implications and inferences arising upon them, make evidence, and sometimes very strong evidence. We cannot doubt—it is clear— that there was evidence in this case to go to the jury. If they believed it in all its reasonable bearings, and we must take it that they did, the verdict was fully warranted. *State* v. *Patterson*, 78 N. C., 470; *State* v. *Crockett*, 82 N. C., 600; *State* v. *White, supra; State* v. *James*, 90 N. C., 702; *State* v. *Gaskins*, decided at this term; Lawson on Presumptive Evidence, 537– 552. The other exceptions in the record are without merit, and were properly abandoned in this Court.

There is no error and the judgment must be affirmed. To that end let this opinion be certified to the Superior Court according to law.

No error.                                            Affirmed.