STATE v. J. R. POWELL.

*Burglary—Special Venire—Evidence—Abuse of privilege.*

1. A juror summoned on a special *venire* is qualiffed to serve, if he be a freeholder.

2. If a juror summoned on a special *venire* fails to answer, but his name is put in the hat and drawn therefrom, and being again called, he fails to answer a second time, this does not entitle the defendant to an additional challenge.

3. What is evidence, and whether there is any evidence, are questions of law for the Court; what weight the evidence is entitled to, is a question of fact for the jury.

4. If the evidence, considered as a whole, will not, in any just and reasonable view of it, warrant the verdict, then there is no evidence sufficient to be left to the jury, and the Court should so declare.

5. If the evidence only raises a conjecture or suspicion of a fact, such fact should not be left to the jury.

6. Counsel have a right to argue the law as well the facts to the jury, and in doing so, they may read adjudged cases, but the facts contained in such cases cannot be commented on as the facts of the case on trial.

7. An exception that counsel abused his privilege in his address to the jury, will not be noticed in this Court, when not made in apt time.

(*Cobb* v. *Fogleman*, 1 Ired., 440 ; *State* v. *White*, 89 N. C., 462 ; *State* v. *Jones*, 90 N. C., 702 ; *State* v. *Atkinson*, 93 N. C., 519 ; *State* v. *Suggs*, 89 N. C., 527 ; *State* v. *Bryan*, *Ibid*, 531 ; *State* v. *Carland*, 90 N. C., 668 ; *Horah* v. *Knox*, 87 N. C., 483, cited and approved ; *State* v. *Neely*, 74 N. C., 425 ; *State* v. *Massey*, 86 N. C., 658, and *State* v. *Mitchell*, 89 N. C., 521, cited and commented on).

INDICTMENT for burglary, tried before *Philips, Judge*, and a jury, at November Term, 1885, of the Superior Court of EDGE-COMBE county.

On calling the special *venire*, one Henry Weeks, who had been summoned, failed to answer. His name was, by consent, put into the hat with the names of the jurors who had answered, from which the jury was to be drawn. Before the jury was completed, the name of this juror was drawn, and upon being called again, failed to answer. Whereupon the prisoner claimed that this entitled him to an additional challenge. The Court ruled against the prisoner on this point, and he excepted.

After the prisoner had exhausted twenty-three peremptory challenges, a juror was drawn and tendered prisoner, who claimed the right to challenge him peremptorily, because Weeks, the defaulting juror, had not been presented for his acceptance. This was denied by the Court, and prisoner excepted.

One Howard being drawn, was challenged by the prisoner for cause; and on examination, testified that he was a free-holder, and had paid his taxes for the year 1883, but had not paid them for 1884. The Court held that this juror was competent to serve, and prisoner excepted.

The prisoner's counsel, in his argument to the jury, insisted that taking the evidence of the State as true, there was no evi-

dence to go to the jury of the felonious intent charged in the bill of indictment, and requested the Court so to charge, and excepted to the refusal of the Court to give this charge, and to the charge as given on this point.

In reply to the argument of counsel for the prisoner on this point, the counsel for the State argued the sufficiency of the evidence for this purpose, and by way of illustration, read and commented on the case of *State* v. *Mitchell.* This was excepted to by prisoner's counsel after the reading of the case was concluded.

The other facts necessary to an understanding of the decision, are sufficiently stated in the opinion of the Court.

There was a verdict of guilty, and judgment pronounced in pursuance thereof, from which prisoner appealed.

*Attorney-General,* for the State.
No counsel for prisoner.

MERRIMON, J.   The first, second and third exceptions, in respect to the challenge of jurors, are manifestly untenable. *State* v. *Carland,* 90 N. C., 668.

The principle question presented by the record is, did the declarations of the prisoner, the circumstances, and all the facts in evidence on the trial, in their direct tendency, their natural relations to, and bearings upon each other, and the just inference to be drawn from them, constitute evidence to go to the jury, of the alleged intent of the prisoner to ravish the prosecutrix.

If there was such evidence, it was the province of the jury to determine its weight and sufficiency to warrant them in rendering a verdict of guilty.   But if the evidence, so considered as a whole, could not, in any just and reasonable view of it, warrant such a verdict, then there was not legal evidence to go to the jury at all for the purpose mentioned, and the Court ought to have so decided.   Because, what is evidence, and whether there be any, are questions of law to be decided by the Court, and there can be no conviction without legal evidence to support the

charge in the indictment. Legal evidence is not such as merely raises suspicion, and leaves the matter in question to conjecture— as said above, it is such as in some just and reasonable view of it—taking all the facts, whether they be many or few, as will warrant a verdict of guilty. *Cobb* v. *Fogleman*, 1 Ired., 440; *State* v. *White*, 89 N. C., 462, and cases there cited; *State* v. *James*, 90 N. C., 702; 1 Greenleaf on Ev., §49; *State* v. *Atkinson*, 93 N. C., 519.

This being the well settled rule of law applicable here, we cannot doubt that there was evidence to go to the jury, to prove the intent of the prisoner to ravish the prosecutrix as charged. That she, her infant, and an old colored servant woman made up her family; that the prisoner went into her house at the dead of night, when people were generally asleep, and so far as appears, without any lawful purpose, and at the back door, demanded admittance, and when questioned as to his identity, falsely gave the name of a white citizen of the neighborhood; that he went from that to another door, pushed at it, demanding admittance, threatening to force it open if not admitted; that he did violently force it open, was evidence, very strong evidence, that he was a desperate, devilish and dangerous man, capable of perpetrating the most heinous crimes. If these facts existed, they were leading and striking, and of themselves pointed to some criminal intent. Men do not, certainly in civilized life, prosecute their civil purposes, whatever they may be, under such circumstances, in such a way, and at such an hour. But uniform observation, in and out of criminal tribunals, serves to show, that desperate men do thus frequently prosecute their criminal purposes of the most serious nature.

There was then, evidence of a criminal purpose. What was it? There was no particular fact tending to show that he broke into the house to steal anything, or that he did so. Indeed, he declared the contrary. Nor was there any evidence that any one there sustained any relationship to him, or owed him any debt or obligation of any kind; nor was there the slightest evi-

dence that he had a grudge at, or quarrel with any one there, and hence his purpose might be revenge. The prisoner broke open the door, and entered exclaiming: "There is a woman in here; where is she; after I get her, I have got no use for the house, nor anything in it." So far as appears, he had no right, or pretence of right, to see, have, or have anything to do, with any woman there. It seems the fact was just the contrary, as both the women fled the house to escape from him. On the trial, the the prisoner offered no explanation of this important declaration; he left it unexplained—to speak for itself, in the light of the surrounding facts. He wanted a woman there! What did such a man, at such a place, at such an hour, in the absence of claim or right, or lawful purpose of any kind, want with a *woman* there? Is it not a most reasonable and just inference, in the absence of all explanation, that he wanted her for the purpose of sexual intercourse, and that he intended to have it by force? His alarming and violent persistency, indicated such a purpose. Asking for the woman, he at once ordered the infirm old man, who, it seems, without his knowledge, had gone there to aid the prosecutrix, to leave the house. Wherefore? Most probably that he might the more easily and privately accomplish his criminal purpose with the woman.

There was, then, evidence of the intent to ravish the woman. But which woman? In the absence of explanation, it is reasonable to infer, that he wanted the woman most likely—best suited—to gratify his lustful desires—the younger and possibly the more desirable woman in every respect. It is not probable, but on the contrary, very improbable, that he would have the purpose to ravish an old colored woman, when he could, just as easily, and with no greater hazard, force a much younger and a white woman. It is seldom that the most debased criminals ravish old women, and yet more seldom, when they can just as easily ravish young ones.

When the prisoner said, seeing the infirm old man unexpectedly, "There is a woman here; where is she?" the reasonable

implication was, that he asked for the principal one—the younger one—the mistress—the one who was most certainly there in her own house.   If he had wanted the old woman—the servant—he would probably have designated her as such; he would have shown some hesitation to disturb the mistress.   But he showed no hesitation—no deference to any one; his manner and his course of conduct were desperate, violent, and right on towards the woman whom he sought.   As we have said, every reasonable inference excluded the probability that he had any other purpose, than to gratify his lustful desire by force.

There are four counts in the indictment for burglary—one charging an intent to steal the goods of the prosecutrix; one the goods of the servant woman; one to ravish the prosecutrix, and one to ravish the servant woman.   The jury rendered a verdict of guilty on the third count.   We do not doubt that the evidence was such as might reasonably warrant such a verdict.   It was not unreasonable.   The evidence was much stronger than in the case of *State* v. *Neely*, 74 N. C., 425, or that in *State* v. *Massey*, 86 N. N., 658, and quite as strong as that in *State* v. *Mitchell*, 89 N. C., 521.

The objection to the comments of the State's counsel in the argument to the jury, came too late.   Besides, they were not in themselves unreasonable, and it was the provence of the presiding Judge to interfere, if he saw that injustice was likely to be done the prisoner.   *State* v. *Suggs*, 89 N. C., 527; *State* v. *Bryan*, Ibid., 531.

If there was ground of objection to the reading of the case of *State* v. *Mitchell*, *supra*, and the comments of counsel on the same, it ought to have been interposed before it was read, or while counsel was reading it.   It does not appear that it was read with a view to have the jury apply the facts of that case to this, or that it had any improper weight or application.   The counsel had the right to apply the principle of that case to this, in his argument.   It was the duty of the Court, to prevent any improper application of it, and we do not doubt that he did.

Indeed, in the charge to the jury, he recited the evidence, and expressly cautioned them that they were not to take evidence from the counsel, nor from the Court, but from the witnesses themselves. The subject of the right of counsel to cite and comment on reported cases, is discussed in *Horah* v. *Knox*, 87 N. C., 483; and the decision in that case, harmonizes with what we have here said.

We have given the case the earnest and cautious consideration its gravity merits, and we have found no error in the record.

Let this opinion be certified to the Superior Court, to the end that further action may be taken there according to law. It is so ordered.

No error.                                                   Affirmed.