THE STATE v. HAYWOOD MITCHENER and SAMUEL MOORE.

*Evidence—Larceny—Witness.*

1. Where it appeared upon the trial of an indictment for larceny that a store-house had been broken open and property taken therefrom about midnight; that upon a witness, who was passing, calling out, shots were fired at him; that the defendant lived near by and had left his house after supper, but returned at about the time the shots were fired; that he remarked next morning he "did not reckon anybody would run in on anybody else again in a close place;" but there was no other testimony connecting him with the larceny; *Held*, that the evidence was too slight to be submitted to the jury.

2. Any removal of the property alleged to be stolen is a sufficient asportation.

3. It is not error to refuse to instruct the jury that they ought not to convict upon the testimony of a confessed felon, who is under indictment, and who testifies under a promise of immunity from punishment. The testimony of such witness that the defendant admitted to him that he was present at the commission of the crime charged against him, is some evidence to go to the jury.

(*State* v. *Atkinson*, 93 N. C., 519; *State* v. *Powell*, 94 N. C., 965; *State* v. *McBryde*, 97 N. C., 393; *State* v. *White*, 89 N. C., 462; *State* v. *Craige*, Ibid., 475; *State* v. *Haney*, 2 D. &. B., 390, and *State* v. *Miller*, 97 N. C., 484, cited).

INDICTMENT for larceny, tried before *Merrimon, Judge*, at August Term, 1887, of JOHNSTON Superior Court.

The indictment charged Robert Watson, Haywood Mitchener, Samuel Moore and Wiley Sanders, with the felonious taking of the property of John H. Parker. Watson pleaded guilty, and the jury returned a verdict of guilty against the others.

Dr. R. C. Noble, for the State, testified in substance, as follows: " The store of J. H. Parker, in Selma, is about 110 or 115 feet from my house. About the 17th of August, 1885, came home at night between one and two o'clock, a. m.; saw a light flash several times over the transom of Parker's store ; also something black, as if the white door of Parker's store was partly open; went towards the store and called "John " (the clerk); was then shot at several times from the inside of the store, and from the outside also; pistol balls made two holes in skirt of rubber coat (which witness had on); ran to Parker's house, who, with me and my brother, went back to the store, but found no one there; found a sack of bacon on the side-walk in front of the store, and a small sack of flour."

John H. Parker testified: " Saw the flour and meat spoken of by Dr. Noble on the side-walk; the flour was mine, with my mark; I think the bacon was mine also. It was like meat I had in the store."

Bob Price (col.) testified: " Was at Sam Moore's the night of the shooting—sat up in company with Jane Branch, step-daughter of Sam Moore, until about an hour before day. Sam Moore left the house after supper that night, and came back between one and two o'clock; * * * * * witness remained up with Jane Branch; * * * * * did not lie down; did not go to sleep at all that night; left Sam's awhile before day; * * * * * went back to Sam's to breakfast, the sun was about an hour high. At the table Sam said: "he did not reckon anybody would run in on anybody else again in a close place." * * * * * Witness had been accused of stealing by a negro, but was never indicted or pros-

ecuted, and was not guilty; was committed to jail as a witness, and kept there since the preliminary hearing in this case; while in jail received from Dr. Noble a shirt and some melons."

Dr. Noble testified that Price's character was good, and that he had made to him, in substance, the same statement in February, 1886, as that made by him before the Court.

Henry Snow (col.) testified: "A short time after the shooting at Parker's store, Haywood Mitchener was passing by Wilson's Mills; the train stopped for a minute or two, and Haywood jumped off and ran to where I was. I spoke to him about the shooting at Parker's store, and told him that I had heard that he was in it. Mitchener said, "Yes, I was, and it was I that did the shooting.'"

On cross-examination it was made to appear that this witness was a Methodist preacher; that he had been recently detected in stealing cloth from John H. Parker, arrested, and kept in a room all night, guarded by ten or twelve men, some of whom told him that it would be best for him to tell all he knew. It was there that he first made public what Mitchener had told him at Wilson's Mills. He had plead guilty at the present term to an indictment for the larceny of goods taken in the night-time from the store of Winston Bros., of Selma; also to an indictment for breaking into the smoke-house of Jackson Raines in the night-time and taking a large quantity of bacon therefrom. The smoke-house was in the same enclosure with the dwelling, and about 30 feet from it; had first admitted his guilt, and then protested his innocence of this charge; (was not indicted for breaking into Parker's, nor, so far as he knew, accused of it) Had been promised immunity from punishment if he would become a witness against other parties indicted with him, among them Haywood Mitchener. Judgment was suspended in the two cases upon the payment of costs. He had been promised by the

men who guarded him on the night of his arrest that he should go unpunished if he would tell on the rest

Jane Branch testified, and contradicted, in detail, the statement of Bob Price, as to what occurred at Sam Moore's. This witness had had two husbands living at the same time.

Neil Munns testified that he was at Sam Moore's on the night of the shooting, and contradicted Bob Price.

Herod Smith testified that on the night of the shooting he and Haywood Mitchener slept in the same bed; was awakened by the pistol shots, and Haywood was then in bed with witness.

After verdict of guilty was rendered, and before sentence, the defendant moved for a new trial, on the grounds:

1st. That the verdict was not justified by the evidence.

2d. That there was no evidence of any asportation of the property charged to have been taken by the defendants.

3d. That the Judge, in his charge to the jury, failed to instruct them that the evidence of Henry Snow, a confessed thief, who testified under the threat of punishment, and under promise of immunity from all punishment in case he did testify against the defendant Haywood Mitchener, was insufficient to convict.

The counsel for the defendant, in their argument to the jury, took the ground that the evidence of Henry Snow (as to a confession of Haywood Mitchener), surrounded by the facts stated, was insufficient to convict, and asked his Honor to so charge the jury, which he failed to do.

All motions for a new trial overruled, and the defendants Mitchener and Moore appealed.

*The Attorney General,* for the State.
*Messrs. Pou & Massey* filed a brief for the defendants.

DAVIS, J., (after stating the case). 1. If there was any evidence it was for the jury to say what weight and effect

should be given to it.  It has been often said that what is
evidence, or whether there is any evidence, are questions for
the Court—its force and effect for the jury.  When there is
*any* evidence to go to the jury, it is not within the province
of the Court to say what weight they shall give to it.  If, in
the opinion of the Court, the verdict is against the weight of
evidence, or is not justified by the evidence, the Judge may,
in his discretion, set it aside, but this Court cannot review,
direct, or in any way control his discretion.  These proposi-
tions are too well established to need reference to authority.
Juries generally know best what weight to give to the testi-
mony of witnesses—the bias and influence under which they
speak—their manner and bearing—come under their imme-
diate observation, and they can form a much more accurate
estimate of the weight to which the testimony of witnesses
is entitled than can be derived from a perusal of the testi-
mony; and the Judge, who presides at the trial and witnesses
all that transpires, can form a more accurate opinion as to
the fairness of the verdict, and is the best and safest deposi-
tory of discretionary power over the verdict.

Was there any evidence in this case that should have gone
to the jury?  Upon a careful examination of the evidence
sent up, we think that, as to the defendant Mitchener, there
was some evidence, and the jury having found a verdict of
guilty, the refusal to grant a new trial upon the first ground
assigned is, as to him, not subject to our review.  *State* v.
*Atkinson,* 93 N. C., 519; *State* v. *Powell,* 94 N. C., 960; *State* v.
*McBryde,* 97 N. C.

The character of the evidence against Mitchener will be
considered under the third exception.

As against the defendant Sam Moore, we think the evi-
dence was too slight and insufficient to reasonably warrant
a verdict of guilty, and it should, therefore, not have been
submitted to the jury.  It was purely circumstantial, and
instead of constituting such a chain of circumstances as to

lead, beyond reasonable doubt, to that defendant's guilt, there were but two broken links in the chain, neither sufficient in itself, nor both together, to constitute more than a *scintilla* of evidence—a mere conjecture—of guilt. The simple fact that he was from home, without any circumstance in any way connecting him with the crime charged, could be no evidence of guilt. What was said at the breakfast table was entirely consistent with innocence, and, as was said by his counsel, " was a very natural remark, and might have been innocently made at half the breakfast tables in Selma." The matter was doubtless the subject of much talk, and a guilty person, interested in concealing rather than divulging the perpetrators of the crime, would have been less apt to make such a remark than an innocent person.

We think the ruling in the case of *State* v. *White*, 89 N. C., 462, and what was said by MERRIMON, Judge, in that case, entirely applicable to this case, and we deem it unnecessary to do more than to refer to that case and the authorities there cited.

2. It is insisted that there was no evidence of asportation. Parker testified to the identity of the flour, and that it was his, and he thought the bacon was his also. The flour and ham were found on the sidewalk; it had been in the store. Somebody had removed it. Any removal is a sufficient asportation, and there was evidence of removal. *State* v. *Craige*, 89 N. C., 475, and cases cited.

3. The failure of his Honor to charge the jury, as requested by counsel for the defendant in their argument to the jury, in regard to the testimony of Henry Snow, is not a ground for a new trial. Since the case of *State* v. *Haney*, 2 D. & B., 390, it has been held that juries may convict upon the unsupported testimony of an accomplice, if they shall believe his statements. *State* v. *Miller*, 97 N. C., 484, and cases cited.

Henry Snow was not an accomplice in this case, but he seems to have been a very great thief, and testified under

very strong inducements, and yet the jury may believe a notorious thief, even when testifying under circumstances of great temptation, but they are not apt to do so, unless there is some inherent probability of truth in his statements, or unless, from *all* that appears before them in the trial, they are satisfied that he has told the truth. It is apparent that there were more thieves than one engaged in stealing the ham and flour—there seems to have been much stealing in Selma about the time. It is quite probable that the thieves engaged knew others of their own character and profession; and to whom would they more probably unbosom themselves than to a fellow-thief? And to what fellow-thief sooner than to one who, in addition to brotherhood in crime, was a spiritual guide and adviser, and pretended to pray and preach for them? The jury not only heard what was said, but the defendants as well as witnesses were before them, and they had the aid of what they saw as well as heard—of looks, manners, expression of countenance, &c. The attendant circumstances aid juries in determining what, if any, credit they will give to witnesses, and there are circumstances under which they may believe the testimony of very bad and untruthful men, and cases in which such evidence may be satisfactory.

As to the defendant Moore there is error, and he is entitled to a new trial. As to the defendant Mitchener there is no error.

Affirmed as to Mitchener, and reversed as to Moore.