### THE STATE v. GEORGE GOINGS.

*Larceny—Evidence.*

Upon the trial of an indictment for the larceny of a horse, there was testimony tending to show that the horse was stolen at night; that the defendant lived near; that he and one S. were seen in the vicinity the day previous; that tracks leading from the stable from which the horse was stolen, accompanied by those of one person, joined the tracks of another and a mule in a road near by; that next day the horse and a mule were seen in the possession of S. some twenty miles distant, where the defendant met him, and without inquiring as to where the horse and mule were obtained, or for what purpose they were being taken away, agreed to assist in conveying them to a distant point, and did aid in removing them : *Held*, to be sufficient evidence to be submitted to the jury to be considered upon the question whether the defendant had stolen or aided in stealing the property.

This is an INDICTMENT for larceny, tried before *Connor, J.,* at Spring Term, 1888, of ROCKINGHAM Superior Court.

The defendant was convicted and appealed.

The facts are fully stated in the opinion.

*The Attorney General,* for the State.
*Mr. T. R. Purnell,* for the defendant.

MERRIMON, J. The single question presented by the assignment of error for our decision is, was there evidence produced on the trial tending to prove the defendant's guilt, to be submitted to the jury? We are of opinion that this question must be answered in the affirmative.

Very clearly there was strong evidence that the larceny charged in the indictment was perpetrated by some person or persons, and there was certainly evidence tending to prove that two persons participated in its perpetration. A witness testified that the black mare, the property of the prosecutor,

was stolen ; that he saw and traced the tracks made by her, and also the tracks of a man, as she and he passed from the stable from which she was stolen through the orchard to the road ; that at the road, in addition to the tracks of the mare, he found the tracks of a mule, and also the tracks of two men ; there was also evidence that a mule was stolen on the same night in the same neighborhood, and that the stolen mare and mule were found the next morning after the larceny in Danville, distant about twenty miles from the place of the larceny, in the possession—apparently in the sole possession—of one Saunders, mentioned by some of the witnesses, and the defendant, who was there without employment or business, or anything to do; met him apparently by accident in possession of the animals mentioned on an unfinished and unused bridge across the Dan River. He knew Saunders, had seen and been with him the day next before that day ; the evidence went to prove that the latter had stolen the mare and mule the night before; nevertheless, the defendant, without inquiry as to the ownership of the mare and mule, or as to how he came to have possession of them, or as to why he had them at the unused bridge, or as to why and for what purpose he was taking them to Big Lick, consented, with reluctance at first, to go with him under the circumstances, without any apparent necessity for his going. The day next before that—the mare and mule having been stolen at some time during the intervening night—the defendant and Saunders were seen by a witness at the house of the defendant's father, and also they were seen together in the neighborhood of the place where the mare was stolen, going in that direction and in the direction of Danville, in which place they were found the next morning with the mare and mule, as above stated.

These facts—if they were such—pointed to the defendant as a participant in the larceny charged, and they pointed to no person or persons other than himself and Saunders, nor

did any of the evidence point to any other person or persons as the guilty parties. They were together in the neighborhood of where the mare and mule were stolen on the day of the night of the larceny; they had opportunity to steal them on the night mentioned; two persons participated in the larceny; they were seen in possession of the stolen property in Danville; the jury might so believe. The defendant apparently was employed by Saunders to go with him to Big Lick; both the facts and circumstances of such employment tended to show that this was a feint, a subterfuge; they were evidence that might-lead the jury to so believe; and if they believed from such evidence that really the defendant and Saunders were jointly in possession of the stolen property, then such possession, recently after the larceny was committed, was evidence to go to the jury to prove the defendant's guilt. He and his confederate could not shift or avoid the responsibility by a pretence that the defendant was not a participant in the larceny, nor could they contrive evidence to exculpate him, nor could they destroy the effect of recent possession of the stolen property as evidence by pretending that Saunders alone was in possession of the property, when in fact they were both in possession and taking the property to Big Lick or elsewhere. There were marks of insincerity about the employment of the defendant by Saunders at the bridge. There was no apparent necessity for it; the latter could ordinarily have easily ridden the mare and led the mule to Big Lick, and thus have saved himself the unnecessary outlay of four dollars that he agreed to give the defendant to go with him. Why did he want the defendant to go with him? And it was strange that he crossed the river at the unfinished and unused bridge, out of the usual way of passage, and stranger still that under the circumstances the defendant made no inquiry as to where Saunders got the mare and mule, whose they were and why he was taking them to the place mentioned.

The facts and circumstances in evidence, taken altogether and in their just and reasonable bearing upon each other, and with reasonable inferences that might properly be drawn from them, we think clearly constituted evidence of the defendant's guilt to be submitted to the jury. From it they might not unreasonably find him guilty, while on the other hand they might have rendered a verdict of not guilty. There was evidence to go to them, and it was their province to give it such weight as they deemed just. *State* v. *White,* 89 N. C., 462; *State* v. *Atkinson,* 93 N. C., 519; *State* v. *Powell,* 94 N. C., 965; *State* v. *McBryde,* 97 N. C., 393.

There is no error. Let this opinion be certified to the Superior Court according to law.

Affirmed.