### H. EPPS v. W. H. SMITH.

*Action for Penalty—Election Expenses—Gifts to Electors by Candidate in order to be Elected—Intent—Pleading—Repeal of Statute—Vested Rights.*

1. There is a manifest difference between contributions made by a candidate for office for his part of the necessary expenses of a political campaign, or paying persons to assist in conducting his own personal canvass, and the giving of money or other things of value to electors in order to be elected.

2. In an action for the penalty imposed by Section 42 of Chapter 159, Acts of 1895, it is not necessary that the complaint should allege a wilful and corrupt intent on the part of the defendant in giving money, &c., to electors in order to be elected to office

3. In the trial of an action for the penalty given by Section 42 of Chapter 159. Acts of 1895, it appeared that the defendant in the statement of his expenses filed with the Clerk had stated that he gave $20.00 to a certain named elector who was of his own political party, "for services to the ticket" and there was testimony that such elector was opposed to the election of the defendant and had organized a club hostile to him and had worked for the rival candidate up to the day of the election when he was "quiet." The filed statement of defendant's expenses also showed that four other electors of a different political party from defendant's also received money and whiskey from him to be used by them "as best they could and thought proper" and "as they liked." There was further proof in the statement on the same line. *Held,* that there was sufficient evidence to be submitted to the jury on the issue they were trying, since, if they believed the testimony, the jury might reasonably have concluded that the defendant had used money and whiskey in order to be elected as charged in the complaint.

4. The repeal by Section 42, Chapter 185, Acts of 1897, of the penalty imposed by the Act of 1895, subsequent to the commencement of the action for such penalty, did not destroy the plaintiff's cause of action (Section 3764 of *The Code*).

DOUGLAS, J., dissents *arguendo.*

CIVIL ACTION tried before *Robinson, J.,* and a jury at May Term, 1897, of VANCE Superior Court.

The plaintiff introduced the sworn statement of election expenditures filed by the defendant in the office of the Clerk of the Superior Court of Vance County as required by Section 72, Chapter 159, Laws of 1895, in which (among others) appeared the following items :

"To Andrew Watkins, services (straight ticket), - $10 00
"To H. B. Eaton, for services to the ticket, - - 20 00
"To Giles Weir, two gallons whiskey (to be used as he thought proper), - - - - - - 3 80
"To Lovelace Young, one gallon of whiskey, (to be used as he thought best), - - - - - 1 90
"To Joe and Phil. Hunt, to be used as best they could and thought proper, - - - - 5 00
"To Jim Gill, whiskey to be used as he wished - 1 00
"To one gallon whiskey furnished R. M. Townes, to be used as he pleased, - - - - - 1 75
"To half-gallon whiskey furnished to Dan'l Bullock, to be used as he pleased, - - - - - 1 00
"To one gallon furnished J. A. Greenway, to be used as he liked, - - - - - - 1 60
"To one gallon furnished Henry Turner, to be used as he liked, - - - - - -
"To one gallon furnished W. H. Reaves, to be used as he liked, - - - - - - "

The statement filed also contained the following :

"The parties named above are all Republicans and are working for the straight Republican ticket as I am informed, except Mr. Weir and Mr. Greenway (and perhaps one more) and Joe and Phil. Hunt. I treated and drank with men of all parties before and during and since the campaign, but not with a view of influencing their votes, nor in aiding my election; would have done so if I had not been a candidate."

R. A. Field, a witness for plaintiff, testified: "I live in

Williamsborough; I know H. B. Eaton. During the campaign of 1896, Eaton favored and worked for Garrett for sheriff; he got up a Garrett club at my store. I think he continued for Garrett until the day of election, when he was quiet; he is a quiet man on election days—not the quietest nor the wildest man. He was dull on Garrett, and I tried to get him to work faster. I don't know how Eaton voted. I know Andrew Watkins; he was Chairman of the Republican Executive Committee for Williamsborough township; I don't know what his attitude was as to Smith, except that he told me that "the Republican Convention (of which he was a member) and the Populist Convention had agreed to nominate Garrett."

Cross-examined. He said: "I don't know that Watkins attended the second Republican County Convention, held August 22, 1896, (at which Smith was nominated for sheriff), as a delegate; I heard him say after his return from the Republican Convention, held in May, that they had fused on a satisfactory ticket. I know that Garrett was the candidate for sheriff."

Lovelace Malone, a witness for plaintiff, testified: "I don't know whether Eaton was a Smith, a Garrett or a Powell man. Andrew Watkins was Township Chairman of the Republican Committee; I heard Andrew Watkins say, at a meeting about ten days before the election, he had seen Holton in Henderson, and he advised that Garrett or Smith get off the ticket. I heard Andrew Watkins ask in a meeting in Williamsborough, the night before the election, if Williamsborough would endorse Garrett; he said he was not tied to either one."

Plaintiff rested his case.

His Honor being of opinion that there was not sufficient evidence to go to the jury, directed a verdict for defendant, and gave judgment accordingly. Plaintiff excepted and appealed.

*Mr. T. M. Pittman,* for plaintiff (appellant).
*Messrs. W. B. Shaw* and *T. T. Hicks,* for defendant.

MONTGOMERY, J.: This action was brought by the plaintiff to recover of the defendant the forfeiture pronounced against violations of Chapter 159, Section 42, of the Acts of 1895. The allegation is that in the times just preceding the last general election the defendant, who was a candidate for the office of Sheriff of Vance County, gave money and whiskey to various electors in order that he might be elected to that office. The chief evidence in the case against the defendant is furnished by his sworn statement of his election expenses filed under the requirement of Section 72 of the Act of 1895.

The language of the statute under which the action is brought is clear, and we think its meaning is also clear. It would seem almost impossible to confuse or confound the natural understanding of men as to the meaning of this law, by arguing that there is no difference between a contribution made by a candidate for office for his part of the necessary expenses of a political campaign or paying individual persons to help him conduct his own personal canvass, provided the electioneering be honest and the service duly rendered, and the giving of money or any other thing of value to electors in order to be elected. The first is the payment for proper services rendered, the last is the giving for no service rendered and for no return except that of the vote of the elector. The law contemplates that the elector shall not receive money for his vote, nor shall a candidate or any other person for him, give money to an elector in order that the candidate may be elected to office.

The defendant's counsel insisted here that it was necessary that the complaint should have alleged a wilful and corrupt intent on the part of the defendant to do the acts

complained of. We are not of that opinion. It is the doing of the *particular act*, to-wit, giving money to electors in order to be elected that gives the cause of action, and the intent with which the act is done is not material except that the purpose must be to procure the election of the defendant. Even in statutory crimes, where the act itself is made indictable, this Court has held over and over again, that the intent is not to be considered except as to the intent to do the act forbidden. In *State* v. *Voight*, 90 N. C., 741, this Court said: "The criminal intent is inseparably involved in the intent to do the act which the law pronounces criminal." In *State* v. *McBrayer*, 98 N. C., 619, the Court said: "When the language is plain and positive and the offence is not made to depend upon the positive wilful intent and purpose, nothing is left to interpretation." To the like effect are the decisions in *State* v. *Kittelle*, 110 N. C., 560; *State* v. *Downs*, 116 N. C., 1064; *State* v. *McLean*, at this term.

In the statement of the defendant, heretofore referred to, he said that he gave $20 to a certain named elector, who was of his own political party, "for services to the ticket." A witness was introduced for the plaintiff who testified that *that* elector was opposed to the election of the defendant to the office of Sheriff and had organized a political club hostile to him, and for his opponent; that he worked for the rival candidate in a half-hearted way until the day of election, when he was "quiet." The statement of the defendant also showed that four other named electors of a different political party from that of the defendant, received from him money and whiskey to be used by two of them "as best they could and thought proper," and by the other two "as they liked." There was further proof in the statement on the same line. We do not agree with his Honor that the above was not sufficient evidence to be submitted to the jury

121—21

on the issue they were trying. The jury, if they believed the testimony, might reasonably have concluded that the defendant had used money and whiskey in order to be elected Sheriff of the County as charged in the complaint.

The Statute, Chapter 159, Section 42, of the Acts of 1895, under which this action was begun, was amended at the last session of the General Assembly, Chapter 185, Section 42; the amendment consisting in the striking out from the Act of 1895 the forfeiture of $400. The defendant's counsel argued that, notwithstanding the provisions of Sec. 3764 of *The Code*, which reads, "the repeal of a statute shall not affect any action brought before the repeal for any forfeitures incurred or for any recovery for any rights accruing under such statute," the repeal of the penalty clause after this action was begun took away the plaintiff's cause of action if he ever had any. The contention was that section 3764 of *The Code* was not in harmony with the Constitution, that instrument ordaining that "The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction which rightly appertains to it as a co-ordinate department of the Government." In his brief the defendant's counsel said: "It is admitted that this Section (3764) undertakes to define the meaning and effect of future legislation and to encroach upon the judicial power, and that it ought not to be allowed to do so." We do not understand how the Section of *The Code* referred to in the brief can be said to affect future legislation on the subject of penalties. There is nothing to prevent any succeeding General Assembly from repealing Section 3764, and in doing so leave to judicial determination if it should ever become necessary, the effect of the repeal. Neither do we see in that section of *The Code* any encroachment upon the power of the judiciary. In the case cited *Houston* v. *Bogle*, 32 N. C., 496, by the defendant's counsel, the question involved

---

EPPS *v.* SMITH.

---

was the right of the General Assembly to declare in the Act, under discussion there, what the legal rights of the parties to the suit were before the passage of the Act, and where the Act had injuriously affected rights already vested. The Judge who delivered the opinion in that case stated the question in this language: "The statute was passed afterwards and the question is, can it have any effect upon the rights of the parties in this case or change the law so far as they are concerned from what it was at the time their rights vested." This question does not arise in the case before us.

The defendant's counsel called our attention to the fact that the Act under which this suit was brought had its origin in the Act of 1777, Chapter 116, Section 22, and he stated that he had been unable to find in our Reports a single case brought under its provisions during this century and more, except the one against his client. This may be so, and yet some enterprising citizen of Vance County, some genuine reformer, may have determined not to let this Statute perish from "*innocuous desuetude.*" It may be of consolation to his client for him to believe that in his trouble, wherever it is known, he has the deepest sympathy of many of his brother officers; and from the argument of his counsel here it may not be rash to infer that both client and attorney feel, with redoubled conviction of its truth, even if the client should be convicted, the force of the scriptural declaration that the men upon whom the tower of Siloam fell were no greater sinners than those who escaped.

There was error in the ruling of his Honor and there must be a new trial.

New trial.

DOUGLAS, J., dissenting: This was a civil action brought by the plaintiff to recover the penalty imposed in Section 42, Chapter 159, of the laws of 1895. The plaintiff introduced the sworn statement of election expenditures filed by the

defendant in the office of the Clerk of the Superior Court of Vance County as required by law, and also the evidence of two witnesses. When the plaintiff had rested his case, the Court, being of opinion that there was not sufficient evidence to go to the jury, directed a verdict in favor of the defendant. In this I think there was no error.

The section under which this action is brought is as follows: "That any person who shall, at any time before or after an election, either directly or indirectly, give or promise to give any money, property or reward to any elector, or to any county or district in order to be elected, or to procure any other person to be elected a member of the General Assembly, or to any office under the laws of this State, shall forfeit and pay $400 to any person who will sue for the same, and shall be guilty of a misdemeanor; and any person who shall receive or agree to receive any such bribe shall also be guilty of a misdemeanor."

Section 72 of the same Act provided that: "Every candidate who is voted for at any public election, held within this State, shall, within ten days after such election, file as herein provided an itemized statement showing in detail all the monies contributed or expended by him, directly or indirectly, by himself or through any other person in aid of his election. Such statement shall give the names of the various persons who received the monies, the specific nature of each item, and the purpose for which it was expended or contributed." The same Section specifies the manner' of verification and place of filing, and concludes as follows: "And any candidate who shall neglect or refuse to file such statement shall forfeit his office, if any. he has."

It is a matter of common knowledge that the successful candidate, from the highest to the lowest, filed such statements showing in some instances large expenditures "in aid of their election." The defeated candidates generally neg-

lected this duty, as they were perfectly willing to forfeit an office which they had never obtained, and did not care to erect any further memorials of their vanished hopes.

Sections 42 and 72 must be construed together, and as it is evident that the latter section contemplates legitimate expenses, it is equally evident that the former section applies only to illegitimate expenditures. To say that the phrase "in order to be elected" and "in aid of his election" mean one and the same thing, and that one is lawful and the other unlawful, is a contradiction; and we are at a loss to find any authority for holding that a strict compliance with Section 72 is in itself a confession of guilt under Section 42, as suggested by the plaintiff. If any further evidence of the legislative intent were needed, it is found in the concluding paragraph of Section 42, which refers to the Act therein prohibited as "such bribe." The word "bribe" has a distinct and settled meaning, and always includes some corrupt element.

We think there was no evidence of bribery, or at least a mere scintilla, and that his Honor properly directed a verdict in favor of the defendant, the burden of proof resting as it did upon the plaintiff. *Wittskowsky* v. *Wasson*, 71 N. C., 451; *Best* v. *Frederick*, 84 N. C., 176; *Brown* v. *Kinsey*, 81 N. C., 245; *State* v. *White*, 89 N. C., 462; *State* v. *Powell*, 94 N. C., 965; *Covington* v. *Newberger*, 99 N. C., 523; *Spruill* v. *Insurance Co.*, 120 N. C., 141.

The statement of expenditures was carelessly and even imprudently drawn, but I do not feel called on to place upon the defendant's words the worst possible construction, in order to bring him within the penalty of the Statute that has been repealed.