THE STATE v. GEORGE W. KITTELLE.

*Agency—Liquor, Sales to Minors—Dealers Criminally Respon-
sible for Acts of Agents.*

A liquor dealer is criminally responsible for the unlawful sale by his
agent of liquors to minors, although such sale may have been
against his instructions and without his knowledge.

SHEPHERD, J., dissenting.

This was an INDICTMENT for selling intoxicating liquor to
a minor, tried before *Meares, J.,* at January Term, 1892, of
the Criminal Court of MECKLENBURG County.

The defendant Kittelle was, at the time of the alleged sale,
the proprietor of the Buford Hotel, in Charlotte, and of the
bar connected therewith. The defendant had two clerks in
his bar-room. Shuman testified that he was a minor and un-
married, and that one of the clerks sold him beer, but he could
not state which one it was, and that Kittelle was not present
when he bought the beer. The defendant Kittelle testified
that he had given his clerks "special instructions not to sell
liquor to minors, or on Sunday, and otherwise to comply
with the law." That he closely scrutinized the conduct of
the clerks, and if liquor had been sold to Shuman, or to any
other minor, it was done "without his knowledge, in viola-
tion of his instructions and against his wishes." Kittelle
was a licensed retailer. This was the substance of the evi-
dence.

The defendant Kittelle requested the Court to instruct the
jury that if his clerks had sold liquor to the minor Shuman,
without defendant's knowledge, in violation of his instruc-
tions and against his wishes, they should acquit him. The
prayer was refused, and the Court charged the jury that if
they found that either of the clerks had sold to Shuman,

they should convict the defendant Kittelle. Defendant excepted. Verdict, judgment, and appeal.

The *Attorney General*, for the State.

*Messrs Burwell & Walker, H. C. Jones* and *Osborne & Maxwell* filed a brief for defendant.

CLARK, J.: *The Code,* §§ 1077 and 1078, makes it a misdemeanor for any dealer in intoxicating liquor to sell directly or indirectly, or give away such liquor to any unmarried person under twenty-one years of age, knowing such person to be under that age, and that such sale or giving away shall be *prima facie* evidence of such knowledge, and further, that the father, mother, guardian or employer of a minor to whom intoxicating liquor shall be sold or given away, may maintain an action for exemplary damages, and that in no case can the jury award the plaintiff a less sum than twenty-five dollars.

The defendant contends that no one can be held criminally liable for an act which is done without his knowledge or consent. This is the strength of his contention. It is, in substance, that guilt cannot be attributed to him in this matter, because guilt consists in the *intention,* and that he had no intention to violate the law, because he neither knew of nor consented to the sale. There is, however, a well-defined distinction between those acts which are criminal only by reason of the intent with which they are done, and those in which the intent to commit the forbidden act is itself the criminal intent. As to this very matter of the sale of spirituous liquor to minors, it has often been held that the lack of intention to violate the law did not exculpate, if, in fact, the defendant did the act, or authorized it to be done, which constituted a breach of the law. *State* v. *Wool,* 86 N. C., 708; *State* v. *McBrayer,* 98 N. C., 619; *State* v. *Scoggins,* 107 N. C., 959; *State* v. *Lawrence,* 97 N. C. 492;

110—36

*Farrell* v. *State*, 30 Am. Rep , 614, and numerous cases cited in the notes thereto.

A principal is *prima facie* liable for the acts of his agents done in the general course of business authorized by him, as where a bar-keeper sells liquor, or a clerk sells a libel, or prints one in a newspaper. 1 Whar. Cr. Law, 247, 341 and 2422. And a vendor of spirituous liquors is indictable for the unlawful sale by his agent employed in his business, because all concerned are principals. 2 Whar. Cr. Law, 1503. In *Carroll* v. *The State*, 63 Md., 551, it is held that if, in the conduct of the business of selling liquors, a prohibited sale is made by the agent to a minor, the principal cannot shield himself from liability on the ground that his agent violated his general instructions, and did not inquire, or was deceived by the purchaser as to his age; that while deriving profit from the sale, the principal cannot delegate his *duty* to know that the purchaser is a lawful one to the determination of an agent and be excused by the agent's negligence or error; that intention not being an essential ingredient of the offence, the principal is held bound for the acts of his agent in violation of law while pursuing his ordinary business as such agent; being engaged in business where it is lawful to sell only to such persons as are not excepted by law, it is his *duty* to know when a sale is made that it is to a properly situated person, and therefore it is his duty to trust nobody to do his work but some one whom he can safely trust to discharge his whole duty, and if he does not do so, the law holds him answerable. The same is held in *State* v. *Denson*, 31 W. Va., 122; *State* v. *Dow*, 21 Vt., 484; and to the same effect are numerous other decisions. 11 Am. & Eng. Enc., 718.

The same principle of the principal being criminally liable for the misconduct of his agents applies to many other offences. In the leading case of *Rex* v. *Gutch*, M. & M., 433, cited in 1 Taylor's Ev., 827, which was a prosecution for libel, Lord Tenterden said: "A person who derives profit from, and

who furnishes the means for carrying on the concern, and entrusts the business to one in whom he confides, may be said to have published himself and ought to be answerable."

In *Redgate* v. *Hayes*, L. R., 1 Q. B. Div. 89, the defendant was charged with *suffering gaming* to be carried on upon her premises. She had retired for the night, leaving the house in charge of the hall porter, who withdrew his chair to another part of the hotel and did not see the gaming. It was held that the landlady was responsible. The same principle was maintained in *Mullins* v. *Collins*, L R., 9 Q. B., 292, where the servant of a licensee supplied liquor to a constable on duty, and the Court held the licensee answerable, though he had no knowledge of the act of his agent.

In the present case, had the defendant himself sold the liquor to the minor he would be fixed *prima facie* with the knowledge that the purchaser was a minor. The contention of the defendant that such *prima facie* knowledge is rebutted by the fact that he was not personally present, omits consideration of the fact that the knowledge of the agent is the knowledge of the principal. This is always true, though the *intent* of the agent (when material) is not necessarily the intent of the principal. The law requires the County Commissioners to issue license to retail liquor only to persons whom they shall find properly qualified. This is construed in *Muller* v. *Commissioners*, 89 N. C., 171, to mean that, among other things, the applicant must possess a good moral character. It would be a vain thing to require the Commissioners to take the pains and trouble to ascertain whether the applicant is properly qualified, and to reject him if he is not, if the licensee may immediately upon opening his bar set up as his clerk another applicant who has, perhaps, just been rejected by the County Commissioners, after due inquiry, as not properly qualified, and may claim, upon a violation of the law by such clerk, that he, the licensee, is not liable, because he had instructed his clerk when he employed him not to

violate the law, had often visited his bar-room without seeing any sales made to minors, and no one had informed him that such sales were being made. If such were law, the safeguard intended to be obtained by placing the licensing power in the hands of the County Commissioners, who shall issue license only to those whom they find "properly qualified," would be a delusion and a sham. If the only safeguard is an indictment of the person actually selling, that exists against the principal, and there would be no need of requiring a license of anyone.

The defendant's clerks had no license to retail liquor. Every sale by them to anyone is indictable, and the defendant is indictable with them as co-principal (there being no accessories in misdemeanors) for aiding and abetting them in their illegal traffic, unless it is true that their sales are his sales. If it is valid to protect such sales by them under the authority of the license to him, then their sale is also his sale to make him liable if the terms of the license are not complied with. The licensee cannot put his clerks in his shoes, give them the benefit of the license issued to him upon the confidence reposed in his moral character, and not be held responsible for their violations of the law in the scope of such employment. He cannot set up his bar, receive its profits and abdicate his duties. The duty is imposed on him that the law shall not be violated by a sale to a minor. Here the sale was to a minor. The defendant put it in the power and authority of the clerk to sell. It was the defendant's own risk and peril that he was not present, and that he did not make the sale himself. That his agent did not obey his instructions and negligently or purposely violated the law, does not exculpate the defendant. The law has been violated. It looks to the man it authorized to sell—the licensee—this defendant. The sale by the clerk was in law a sale by the principal, and the violation of the law must be laid upon the defendant, who gave the clerk

the means and the authority to sell, but did not take proper care in selecting his agent or use means sufficient to prevent illegal sales by him. It will not do for the defendant to say that he authorized legal sales and the clerk made illegal sales. The law authorized the defendant to sell. Whether his sales are legal or illegal is at his peril, and it can make no difference whether he sells by his own hands or through an agent whom he improperly selected or insufficiently supervised. The violation of the law is at the door of the man whom alone the law authorized to sell. The agent or clerk (if identified) is also liable as aiding and abetting in the illegal sale. *State* v. *Wallace*, 94 N. C., 827.

Either the licensee is responsible for illegal sales by the clerk (*State* v. *McNeeley*, 60 N. C., 232), or the licensee has no authority under his license to sell through the medium of a clerk, and all sales must be by the person himself whom the Commissioners have found " properly qualified," and have licensed to sell. Any other view of the matter would be illogical, and would be a virtual repeal of the law. It would empower the bar-keeper to appoint others as bar-keepers, whom, perhaps, the County Commissioners would have refused to license. However well "qualified" the Commissioners may find the party whom they license, there is no guarantee that he will select clerks who are so, or that he has the energy, the judgment or the skill to prevent violations by them. The law will look to the man it licenses, and he must select his clerks and be responsible for them at his peril.

In *Carroll* v. *State, supra*, the Supreme Court of Maryland, upon a state of facts and a statute almost identical, comes to the same conclusion, it says: "When the agent, as in this case, is set to do the very thing which, and which only, the principal's business contemplates, namely, the dispensing of liquors to purchasers, the principal must be chargeable with the agent's violation of legal restrictions on the business.

His gains are increased, and he must bear the consequences. The fact that he has given orders not to sell to minors, only shows a *bona fide* intent to obey the law, which all the authorities say is immaterial in determining guilt. The Court may regard such fact, in graduating punishment, when it has a discretion. The cases, therefore, which hold that such orders will exculpate the principal are inconsistent with the rule that in such cases the intent is immaterial. If intent is not an ingredient in the offence, it logically follows that it must be immaterial whether such orders are given or not, for he who does by another that which he cannot lawfully do in person, must be responsible for the agent's acts. In fact, it is his act. It cannot be, that by setting another to do his work and occupying himself elsewhere and otherwise, he can reap the benefit of his agent's sales, and escape the consequences of the agent's conduct. It would be impossible to effectually enforce a statute of this kind if that were allowed, and it would speedily become a dead letter." This case cited also *McCutcheon* v. *The People,* 69 Ill , 606, in which it is said, "it is immaterial whether the sale was made by an appellant or an agent. The agent had no license to sell to anyone, and it is only lawful for him to do so in the name and by the authority of his principal, and the presumption is conclusive that the agent or servant acted within the scope of his authority in making the sale." This latter case is cited and expressly followed in *Noecker* v. *The People,* 91 Ill., 494. To the same purport, that "when, in the absence of a saloon keeper, a sale of liquor is made by his bar-tender, the directions of the former not to sell to minors will not exempt him from liability for the sale," are *Mugler* v. *The State,* 47 Ark., 110; *Edgar* v. *The State,* 45 Ark., 356; *Waller* v. *The State,* 38 Ark., 656; *Loeb* v. *Georgia,* 75 Ga., 258; *Snider* v. *The State,* 7 S. E. Rep., 631.; *Whitton* v. *The State,* 37 Miss., 379; *Riley* v. *The State,* 43 Miss., 397; *Dudley* v. *Sautbine,* 49 Iowa,

650, and many others, though in these cases the statute varies somewhat from that in this State.

In *People* v. *Roby*, 50 Am. Rep., 270 (52 Mich., 577), and *People* v. *Blake*, 52 Mich., 566, it is held that "the owner of a saloon whose clerk, without his knowledge or consent, but while he was on the premises, opened it on Sunday morning to clean it out, and sold a drink to a customer, may properly be convicted of keeping a saloon open on Sunday." The opinion in the first-named case is delivered by COOLEY, C. J., the eminent writer on Constitutional Limitations, and in the course of it he says: "As a rule, there can be no crime without a criminal intent, but this is by no means a universal rule. One may be guilty of the high crime of manslaughter when his only fault is gross negligence, and there are many other cases where mere neglect may be highly criminal. Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible," and numerous incidents and precedents are cited to support the proposition. *Bona fides* was held also to be no defence in an indictment for extortion, *State* v. *Dickens*, 2 N. C., 468 (407); nor for unlawful voting, *State* v. *Boyett*, 32 N. C., 336; *State* v. *Hart*, 51 N. C., 389; nor generally in statutory offences. *State* v. *Presnell*, 34 N. C., 103.

The defendant relies on *State* v. *Privett*, 49 N. C., 100. There the Court charged the jury that if the principal instructed his clerk not to sell, he would not be liable for the sale by the clerk unless such instructions had been abrogated expressly, or by a course of conduct which would tacitly amount to the same. The appeal by the defendant, of course, could not bring up for review this charge which had been made in his favor; but NASH, C. J., takes occasion to say: "The defendant has, as we think, no cause to complain of

his Honor's charge; it was as favorable to him as it could have been." And he adds: "As to the effect of general instructions in such a case as this, it is not necessary for us to give an opinion. But we can say that if they are to have the effect given to them by the charge in this case, and in the argument of the defendant's counsel, the act under which this prosecution is had will be very easily evaded." This is a strong intimation we take it, that if the correctness of the charge had been before the Court it would have been reversed. Accordingly, in *State* v. *McNeeley*, 60 N. C., 232, it is held that a licensee may have a clerk or agent, "he remaining responsible for the good conduct of his agent." The defendant also relied upon *State* v. *Divine*, 98 N. C., 778, in which it is held that a statute making one railroad officer criminally responsible for the act of another was unconstitutional. We do not see the analogy. If the statute had forbidden the doing of a certain act by a railroad company, and provided that if it was done by any of the officers or agents of the company in the scope of their employment, the corporation, being the principal, should be indictable, the case would have been on "all-fours" with the present, and the act constitutional. Indeed, it is pointed out in that very case that the *principal* might be held criminally liable for the acts of the agent, but a co-employee could not. Without any express statute, corporations have been repeatedly indicted for the negligence, or nonfeasance, and misfeasance of their agents, when neither the corporation nor its managing officers had any intention to violate the law, and, in fact, had given instructions forbidding such acts. The corporation is held criminally liable, such instructions being, as in the present case, held not a matter of defence, but in mitigation of punishment. It is needless to cite cases. The doctrine is settled law.

The retailing of liquor is not a matter of natural right, and the whole subject is within the police power of the State,

which can leave it unrestricted or hedge it about with regulations, or forbid it entirely. *Mugler* v. *Kansas*, 123 U. S., 623, and countless other cases. When regulations are imposed, as in this case, the licensee is criminally liable for their non-observance. The defendant was found by the County Commissioners "qualified," and a license was issued to him upon the personal trust that he would conduct the business according to the regulations. The sale here made to a minor was a violation of that trust, and a violation of law. It is no defence that the defendant had no intention to violate the law. "Good intentions" are said by the proverb to be the pavement of another place, but they are not a sound one for a bar-room. The law has been violated. It looks to the man it entrusted with the management of this business, and holds him liable. It is immaterial whether his liability is based upon his negligence in permitting the sale, or upon the principle of agency, or upon both, for the defendant is liable for a negligent sale from insufficient supervision of an agent, as much as if he had ordered the sale. If the clerk, as Judge COOLEY says, *supra*, being in possession of the keys, opened the saloon on Sunday for traffic, the licensee could not excuse himself from liability by his absence or ignorance, nor can he do so in the present case of a sale to the minor by being temporarily absent from the room. The defendant chose to seek for and assume the liabilities of the calling of a saloon-keeper that he might enjoy its profits. He cannot be allowed to enjoy its profits and assign its duties and liabilities to another.

The elaborate argument for the defendant is based on the fallacy that our statute requires a *scienter* to be proven. This would be so, if the section was abruptly cut in two. But taken as it stands, when the State has proven an illegal sale as to a minor, the case is made out. The statute only permits the defendant to withdraw himself from liability by showing that the actual seller did not know that the pur-

chaser was a minor. This was not done in this case. The argument made for the defendant that a merchant might, on the same grounds, be convicted of a larceny by his clerks, is not very complimentary to the defendant, and it is as little beneficial to him. If, however, the law forbade larceny, except upon a license (if it is possible to conceive such a thing), granted after examination, and theft by all not so licensed, or even by them from minors, were indictable, and the clerks, without being themselves licensed, committed a theft by virtue of the defendant's license, from a minor, then only would the case be analogous.

The evidence is uncontradicted that the sale was to an unmarried person who was a minor. No exception was made as to the charge in regard to the purchaser being unmarried, and hence we cannot pass upon a point not raised, and about which, indeed, there was no controversy. Neither the whole of the charge nor of the evidence is stated to have been sent up, only so much as is necessary to present the exceptions made.

The fact that the clerks were acquitted because it could not be determined which one sold to the minor, is a strong argument against the defendant. If the principal were not liable for all illegal sales made under his license, he could, by having several clerks, or changing them often, easily evade punishment for illegal sales. The law looks to the responsible party—the licensee—who has been permitted to carry on the calling, and who is held for its proper exercise. He is to receive the money from the illegal sales, and he can always be identified.

The amount of supervision exercised by the defendant here is a matter in mitigation to be considered by the Court in passing judgment. It was not enough to prevent the illegal sale, and hence is not a defence.

No error.

AVERY, J.: Concurring fully in the line of argument adopted by my learned brother, who has delivered the opinion of the Court, and in the conclusion to which it has led, I desire to add some reasons and authorities which it seems to me tend to sustain and strengthen it.

The statute (*The Code*, § 1077) provides that "it shall be unlawful for any dealer in intoxicating drinks or liquors to sell or in any manner to part with, for a compensation therefor, *either directly or indirectly*, or to give away such drinks or liquor, to any unmarried person under the age of twenty-one years, *knowing* the said person to be under the age of twenty-one years, provided that such sale or giving away shall be *prima facie* evidence of *such knowledge*."

Retail dealers are licensed by the order of Boards of County Commissioners "upon satisfactory evidence of good moral character of the applicant." Laws of 1891, ch. 323, § 32. Proof of moral character is made an indispensable prerequisite to granting the privilege, and this requirement imposes upon the dealer thus clothed by implication with a public trust, the duty of using extraordinary diligence to prevent all violations of the letter or spirit of the law under cover of the immunity from indictment for retailing, which the license gives him.

In construing the general statute (*The Code*, § 1076) which makes a sale "by the small measure, in any other manner than is prescribed by law," a misdemeanor, this Court has not hesitated to look through specious evasions in order to determine the real quality of an act. Whether there was direct and positive proof of the actual criminal purpose of the dealer, or such testimony as raised a presumption only of his unlawful intent to evade, or to carelessly permit his agents to evade its provisions, the *nisi prius* Judges have been sustained in instructing the jury that the evidence, if believed, would warrant a verdict of guilty. *State* v. *McMinn*, 83

N. C., 668; *State* v. *Poteet*, 86 N. C., 612; *State* v. *Kirkham*, 1 Ired., 384

The defendant Kittelle employed two clerks in his bar-room, both of whom are indicted with him. The prosecuting witness testified that he bought beer from one of the clerks, he did not remember which one, but could not testify that both were present when he purchased, and that he was at the time under the age of twenty-one years. Though no actual knowledge, on their part, of the age of the witness was shown, the proof of selling was *prima facie* evidence that they knew he was a minor, and if either had been identified by the testimony as the seller, the Court would have allowed the jury to pass upon the question of his guilt. In the absence of testimony tending to identify the actual seller, the question addressed to the Court was, whether the unrebutted presumption that the clerk who did the selling knew that he was dealing with a minor, was *prima facie* proof of the guilt of the defendant Kittelle, though the jury believed that the sales were made in violation of his instruction, and when he was absent, and could have had no actual knowledge of the transaction.

Conceding, for the sake of argument, as has been contended on behalf of the defendant, that where a legislative act, in unqualified terms, makes a guilty intent of the essence of the offence, the burden is on the State to prove the *scienter*, the peculiar proviso to our statute would involve a novel question, not presented as far as my investigations have extended in any of the cases involving the construction of liquor laws that have been cited. It is too clear and well settled to admit of argument, that the mere proof of the sale to a minor by a clerk raised a presumption of knowledge on the part of the clerk that the purchaser was under twenty-one years of age, notwithstanding the express requirement that the act should be done "*knowingly.*" *State* v. *Scoggins,* 107 N. C., 959. If the artificial force of this *prima facie* proof

extends both to agent and principal, and the guilt of the servant is thereby imputed to the employer, the presumption of the wilful violation of the statute by the former can be rebutted only by showing a want of knowledge of the age of the purchaser on the part of the actual seller, not by proof that the owner was absent, in no wise participated in the act, and had expressed his disapproval of such conduct, as in this case. The clerk who made the sale, if the testimony had identified him, and he had chosen to risk his case upon the credibility of evidence offered to identify, might have been convicted under the statute making guilty knowledge of the essence of the offence, by the force of the presumption, when, in fact, he honestly believed the purchaser was an adult. The proviso makes "such sale to a minor *prima facie* evidence of such guilty knowledge," not solely against the active agent who conducted it, but against anyone who might have been convicted upon the evidence adduced, if both the word "knowingly" and the peculiar qualifying proviso by which it is followed had been omitted by the Legislature. In that case it would have been unnecessary to prove the *scienter* at all, while under the statute as it is, it is essential do so but *sub modo*, viz., by proof sufficient to raise a presumption of guilty knowledge, and that presumption arises when the fact of being a minor is proved. Is the guilty knowledge of selling to the minor, the presumption of which arose on proof of the age, imputed by the artificial effect of the statute to the dealer as well as to the clerk?

If such is the proper interpretation of its language, it is needless to discuss the question of applying the doctrine of *respondeat superior* to criminal prosecutions. Where a Sheriff is indicted (under *The Code*, § 1022) for the escape of a prisoner lawfully placed in his custody, though the prisoner may have escaped from the jail in the immediate charge of a jailor, and in the absence of the Sheriff, the statute imposes the burden on the accused, upon proof that

the prisoner was duly committed to his custody, of showing that "such escape was not by his consent or negligence, but that he used all legal means to prevent the same and acted with proper care and diligence." The punishment for the offence is removal from office, and, in addition, a fine at the discretion of the Court; yet it has never occurred to anyone to doubt the legislative power to make such a law, or to question the propriety of enacting it. The statute provides that any dealer of intoxicating liquors, who sells, etc., "either directly or indirectly," to a minor, shall be guilty of a misdemeanor. What meaning are we to give to the words "directly or indirectly"? They were not intended to extend the provisions of the law so as to punish attempts to evade it, because that was entirely unnecessary. The general statute had made it indictable "to retail spirituous liquors" in any other manner than is prescribed by law, without additional description of the manner of selling, yet it was held a violation of that act to let another go by permission to a barrel and draw a drink at a time, until he should get pay for a debt of $1.25, or to place a table in a room, with a hole in the top communicating with a drawer, and a bottle of whisky and glass sitting on it, and suffer persons to help themselves to a drink of whisky and drop money into the drawer without communication with the owner. In the latter case, for the purpose of preventing the attempted evasion, the jury were allowed to draw the inference of the agreement to take a given price, and to draw the inference also of a deposit for the customer instead of a manual delivery, which was an essential element of the sale. *State* v. *Poteet*, and *State* v. *McMinn, supra.* So, where one made a bargain with the dealer to buy a quart of spirituous liquor, but to take it from time to time, in parts of a quart, till in the aggregate he should get that quantity, it was held that the jury were warranted in finding the dealer guilty of unlawful retailing, without an explicit provision in reference

to evasions, which were deemed prohibited by necessary implication.

The language used in the Illinois statute was, "Whoever, by himself, clerk or servant, shall sell, etc., shall be liable;" and the Supreme Court of that State held that testimony, offered to show that the sales to a minor were made by the dealer's clerk, was properly excluded. *Noecker* v. *People,* 91 Ill., 494. The material words of the Georgia statute were, "No person, by himself or another, shall sell, etc., or furnish any minor or minors spirituous, intoxicating, or malt liquors," etc. The Court of that State held that a dealer could be convicted for a sale by his clerks in his absence, and without his knowledge or consent. *Loeb* v. *State,* 75 Ga., 258; *Snider* v. *State,* 81 Ga., 753 The statute of Arkansas made it a misdemeanor to be "interested" in a sale of liquor to a minor without the written consent or order of the parent or guardian. *Mugler* v. *State,* 47 Ark., 109; *Waller* v. *State,* 78 Ark., ——; *Edgar* v. *State,* 45 Ark., 356. The Court held that "the dealer's absence from the saloon when the bartender sold the liquor to the minor," was not a sufficient defence to an indictment under that statute.

I think that the purpose of the Legislature in inserting the words "directly or indirectly" in the statute, was not needlessly to notify the people that the Court would tolerate no attempts at evasion by resorting to artifice, but to meet the very difficulty which seems to have suggested itself to law-makers in other States, and express the same idea conveyed in Illinois by using the words "by himself, clerk or servant," in Georgia "by himself or another," and in Arkansas by extending the criminal liability to everyone who might be interested in the sale to a minor. If, therefore, the words "directly or indirectly" are susceptible of two interpretations, and might be construed to have been aimed either at evasions by artifice or at violations perpetrated through agents negligently selected, we should adopt that construc-

tion which harmonizes with other legislation upon the same subject, and which manifestly looks to the end of entrusting the business, which had required so much legal supervision, to men whose characters would be a guaranty that the power would not be abused. This guaranty would be worthless, if they could shift the responsibility upon agents who could carelessly or purposely override all laws imposing safeguards on the business. It would seem an unaccountable oversight if intelligent representatives in our legislatures had attempted to protect the public against nuisance by requiring that all persons applying for license. as an essential prerequisite to obtaining the privilege, should satisfy the County Commissioners that they had established good moral characters, and for a generation past had left them at liberty to employ the most immoral men in the community to conduct the business without incurring liability for such flagrant violations of the liquor laws by these agents in selling to minors. Why require the solemn mockery of proof of moral character by the applicant, if, in an hour after the license is issued, he can constitute the worst man in the community his chief clerk, exhort him to obey the laws of the land, bow himself out, and leave the employee free from oversight to sell on commission till the term of license expires.

The section under which the indictment is drawn does not, as we have said, stand alone, but all of our legislation on the subject points with unerring certainty to the one central object of selecting with care the trusted agents of the government, who shall, by virtue of their high moral characters, enjoy the privilege, and, in view of the temptations incident to the traffic, incur the responsibility of licensed dealers in liquors. In the case of *People* v. *Utter*, 44 Barb. (N. Y.), 172, the Court said, in order to convict, proof must be made on the part of the defendant of an intent to violate the statute. Where, as in this case, the sale is not made by the defendant personally, or in his presence, the presumption is not over-

come by merely showing that the sale was made on his premises by his bar-tender." But if that were a correct statement of the law, in our case the presumption of innocence, which the law raises in favor of the accused, is rebutted by force of the proviso, the effect of which is intended to be felt not simply against the servant, but against one who has proved unmindful of the high trust confided to him by society in employing unreliable agents. The law, which looks so closely to his character, does not intend that he shall reap the profits of illicit sales and escape the responsibility for the consequent injury to society. This question does not depend upon analogies drawn from the construction given to statutes of other States widely different from our own. It is the duty of this Court to give a construction to our own act, which is peculiar in two important respects: First, in the use of the words "directly" and "indirectly," in order to put the dealer into the shoes of the agent or servant; and, secondly, in neutralizing, by certain evidence, the force of the word "knowingly" by the proviso following immediately after it, and imposing upon the employee, as well as upon the employer, who is acting "indirectly" through him, the burden of showing that the former did not have knowledge of the fact, proved otherwise to be true, that the purchaser was a minor. Where the presumption of the *scienter* may be raised by proving other facts, upon adducing the requisite proof the burden may be shifted so as to dispense with the necessity of offering, in behalf of the State, any direct evidence to show intent at all. Just as soon as the presumption of the *scienter* is raised, then the prosecution, until rebutting proof is offered, stands in the same position as if the statute had been silent as to proof of intent. In construing section 41, ch. 34 of the Revised Code, which made "persons neglecting to keep and repair their fences during crop time, in the manner required by law, viz, five feet high, guilty of a misdemeanor, this Court held expressly

110 — 37

that the "foreman, when acting under the general direction of his employer, was not liable to indictment for failure to keep the fences of the owner in repair, but that the absent employer was indictable." *State* v. *Taylor*, 69 N. C., 543; *State* v. *Bell*, 3 Ired, 506; *Rex* v. *Gutch*, 1 Mord. & Molk., 437. This is a direct recognition of the principle that where no proof of unlawful intent is required, or where the presumption of guilty knowledge is raised in a way provided by statute, a defendant, who was not present when the act was done or the duty omitted by another, the doing or omission of which constitutes in law the criminal offence, may, nevertheless, be convicted of it. Kittelle, instead of acting directly as salesman at his own bar, chose to perform that important trust through another. So long as the presumption of guilty knowledge on the part of the employee who made the sale remains unrebutted, the testimony, if believed by the jury, must be considered *prima facie* proof of the guilt of an absent hotel-keeper, just as the neglect of the overseer to repair fences is imputed to the absent planter, or as the criminal conduct of an employee was imputed to another, assumed by law to act through him, in the cases of indictment for sales to minors cited above.

The fact that our statute by its express terms makes the dealer responsible for the act of unlawful selling done indirectly through his servant, and imputes to him the purpose or neglect of the subordinate, easily distinguishes our case from those arising under statutes which contain neither this provision, that requiring express proof of intent, nor that specifying certain evidence that may raise a presumption of guilty knowledge.

As I understand it, these differences exist between our statute and those of Mississippi and Michigan, to which our attention has been called, and account for the conclusions reached in the cases cited from the Courts mentioned.

It is true, that the statute of Maryland did not, in express terms, make the *scienter* of the essence of the offence, but it enunciated the very important principle, drawn in question in the argument for the defence, that the act of the bartender would be imputed to his employer, who was held to stand in his shoes, even where the principal offered as a defence the identical evidence introduced in our case, viz., that the sale was made by the clerk in his absence, without his knowledge, and contrary to his instructions. When, therefore, in the consideration of the case at bar, we recall the fact that, by raising the presumption, the prosecution dispensed with the necessity for further proof of *scienter*, just as if it had not been required in any event, then the defendant Kittelle is placed by the principle laid down in that case under the same burden imposed by the presumption on the clerk.

The case of *State* v. *Hayes*, 67 Iowa, 27, went off on a question quite different from that raised here. While the Court laid down, in unmistakable terms, the proposition that a dealer engaged in the business of selling intoxicating liquors "is criminally liable for the acts of his servant or agent done in the course of the business," under a statute which made a guilty knowledge necessary and provided that he should be responsible for sales "by himself, his servant, or his agent," the defendant was discharged for want of proof to support an averment of the indictment, drawn under another clause of the act to the effect that the proprietor kept the spirits with unlawful intent.

I do not contend that the opinion of the Court is sustained by all of the American Courts. Indeed, I find two cases that seem to be plainly in conflict with it. *Anderson* v. *State*, 22 Ohio, 305, and *Bower* v. *State*, 19 Conn., 398. The Missouri statute, which was construed in *State* v. *Shortell*, 93 Mo., 123, failed expressly to prohibit sales made through another, and the decision is put upon that ground, thus plainly dis-

tinguishing it from the case at bar. The Supreme Court of New York, in *People* v. *Schoffer*, 4 Hun., 23, and *People* v. *Mahoney*, *Ibid*, 26, approved the principle which I have stated: that on making proof, which, according to the terms of the statute, raises a presumption of guilty knowledge, the necessity for further evidence of intent is dispensed with. It will not be seriously contended that the Legislature has not the power to give such artificial weight to testimony in criminal actions. The tendency in America, during the last twenty years, has been to provide, by express legislation, for punishing the real proprietors of drinking saloons for the unlawful acts of their agents and servants. And the various statutes have given expression to the common purpose in different terms, as will appear by reference to the quotations from the acts of Arkansas, Georgia, Iowa and other States. In later years, the Courts of most of the States, in construing the statutes, show no disposition to follow the older line of cases, like those cited from the Reports of Ohio, Connecticut and Massachusetts. Following the general current of more modern authority, and the giving to the law under which the indictment is drawn the construction of which it seems so clearly susceptible, I have eliminated the questions that have given rise to the most serious controversy. If the Legislature had the power to declare that a sale made by a clerk should be deemed to have been made by his employer, and the words of the statute can be fairly construed to mean that it has so declared, then the necessity for discussing the general doctrine of the criminal responsibility of principals for the acts of agents done in the absence of the principals, would seem to be obviated. If we were compelled to fall back upon general principles, we would find that, after taking a survey of all the conflicting authorities, Wharton (2 Cr. Law, section 1503) states his conclusion as to the general liability of principals to indictment for unlawful sales by agents, as follows: " A shop or hotel keeper is indictable for

an unlawful sale of spirituous liquors by a servant employed in his business, as all concerned are principals; nor in such a case is it any defence that the agent was directed by the principal not to make the particular sale complained of. Where the sale is not in the immediate line and direction of the principal's business, the fact of agency is only *prima facie* evidence of the principal's guilt." The implication being, as is declared by other writers, that if the sale is made at a hotel bar by a clerk employed to attend to it in the regular course of the business, it will be deemed, for all purposes, the act of the principal himself, who can avail himself of no defence that would not exculpate the agent.

The statement of the case on appeal does not purport to contain the whole of the testimony. No question seems to have been raised as to whether the witness, to whom the sale was made, was married and a minor. It seems to have been admitted, as it doubtless appeared by the evidence, that he was not married, and no question was raised as to the fact that he was a minor.

I see no cause to apprehend danger from giving to our statute a reasonable interpretation, and one that will afford to society the protection that necessarily grows out of the consciousness of responsibility by dealers in intoxicating liquors for acts of their agents done in the line of that business. We will be following in the wake of our sister States of Arkansas, Iowa and Georgia in construing our statute so as to carry out the manifest legislative intent, and at the same time we will reach such a conclusion as will be in harmony with the manifest purpose of the Legislature in passing other kindred laws. If the General Assembly should see fit to declare in express terms that general merchants should be held criminally liable for felonies or misdemeanors committed by their clerks in the ordinary course of business, I think that such a law would stimulate the proprietors of such stores to very great diligence in the search for honest

and law-abiding salesmen ; but until such action shall have
been taken by the Legislature, nothing, in the opinion of
this Court, it seems to me, can be construed to place the mer-
chants in peril of vicarious suffering for the crimes of their
clerks.    Upon the payment of the prescribed amount the
merchant, be he the veriest villain in the land, has a right
to demand any license that he may be required to have.
Should the Legislature, in the exercise of its police power,
and in order to protect agriculture, require him to prove a
good moral character, and pay for the privilege of buying
certain products after night, and make him liable for pur-
chases of stolen cotton, made by his agents between sunset
and sunrise, a different question would be presented.    *State
v. Moore,* 104 N. C., 714.

SHEPHERD, J. (dissenting):    Fully sympathizing, as I do
in the solicitude of my brethren that there should be a rigid
enforcement of all laws which are intended to suppress the
pernicious practice of selling intoxicating liquors to minors,
I am, nevertheless, unable to follow them to the extreme
position of sustaining the conviction in the present case.    To
my mind, it involves not only a radical departure from well
settled legal principles, as illustrated by the current of judi-
cial decision, but it establishes a most dangerous precedent,
the effects of which, in unsettling the old and well defined
safeguards of personal liberty, cannot well be estimated.
     The defendant is indicted for selling intoxicating spirits
to an "unmarried person under twenty-one years of age,
*knowing such person to be under that age (The Code,* § 1077),
and the refused instruction assumes that the unlawful sale
was made by one of the clerks of the defendant, not only
without his knowledge, but " in violation of his instructions
and against his wishes." We thus have the legal paradox of a
man being convicted of *knowingly* doing an act of which he

was entirely ignorant, and which was done in opposition to his wishes and commands.

So strange a result cannot but challenge an inquiry into the principles by which it has been reached, and I am very sure that they cannot be found in the common law doctrine which, in misdemeanors, treats as principals all persons who would ordinarily be accessories before the fact; for there can be no accessory, and therefore no such principal, unless the accused shall have procured, counselled, or commanded another to commit the criminal act. 1 Hale P. C., 616; 4 Blackstone, 36; *State* v. *Mann*, 1 Hay., 4.

The conviction, therefore, must necessarily be sustained on the ground of the liability of a principal for the acts of his agent, and while this doctrine of *respondeat superior* is fully recognized by the law, and even applied in some instances to criminal cases, it has never before, I think, been stretched to the same extent as in the case now under consideration. Without attempting to discuss the general doctrine of the criminal responsibility of the principal for the act of the agent, it is sufficient to remark, with Judge COOLEY, as quoted in the opinion, that many statutes which are in the nature of police regulations, impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible. Under statutes of this character the principal has, in a very few of the States, been held conclusively liable for the act of his agent in the unlawful sale of liquor to minors, while in others the doctrine has been expressly repudiated, and amendments to the statutes thereby necessitated. It is under such statutes or amendatory acts that the decisions which are cited in the opinion are made. The law is otherwise where the statute makes the criminal intent or knowledge an essential ingredient of the offence, and I trust that I may be pardoned for remarking that it is in the failure to observe this all-impor-

tant distinction that the fundamental error of the Court is to be found. All that has been so well said about the policy of the law in dispensing with the element of intent or *scienter*, and the consequent liability of the principal, is applicable to the class of cases mentioned by Judge COOLEY, and clearly has no relation to the class to which the present case belongs, in which *scienter* is an indispensable requisite to a conviction. It is not a little remarkable that this very distinction is to be found in the authorities cited in the opinion of the Court. Take, for instance, the case of *Farrell* v. *The State* (32 Ohio St., 456; 30 Am. Reports, 614), and the notes referred to. In these notes I find the following propositions, viz.:

"First. When, to an offence, knowledge of certain facts is essential, then ignorance of these facts is a defence. Second. When a statute makes an act indictable, irrespective of guilty knowledge, then ignorance of fact is no defence."

It is also remarkable that it is under the second proposition that the learned annotator has placed *McCutcheon* v. *The People* (69 Ill., 601), one of the leading authorities cited in support of the present decision. The foregoing propositions are also sustained in *State* v. *McBrayer*, 98 N. C., 621 (cited in the opinion), in which the present Chief Justice says: "It is only when the positive wilful purpose to violate a criminal statute, as distinguished from a mere violation thereof, is made an essential ingredient of the offence that honest mistake and misapprehension excuses and saves the alleged offender from guilt." See also *State* v. *King*, 86 N. C., 603. It is further to be observed, that this very doctrine is substantially stated in the opinion of the Court and wholly ignored by the decision. The Court says: "There is, however, a well-defined distinction between those acts which are criminal only by reason of the intent with which they are done, and those in which the intent to commit the forbidden act is itself the criminal act." It is manifest that knowledge and intent are used as interchangeable terms,

and even if it did not so appear, they must, of course, as a matter of law, be considered as synonymous when applied to cases of this character. 1 Whar. Cr. L., 297. The cases of *State* v. *Wool*, 86 N. C., 708, and *Ferrell* v. *State, supra,* fall within the latter branch of the above proposition, and it will be seen hereafter that the other cases cited in its immediate connection have but little or no bearing upon the point before us.

Having fully established the distinction above mentioned, I will now proceed to an investigation of the other authorities upon which the decision is based. The case of *Ferrell* v. *The State, supra,* so far from sustaining, seems to be in direct conflict with the view of the Court, as it is there held, even under a statute which did not require any *scienter* or intent, that the defendant could show in his defence that the liquor he sold was represented to him as free from alcoholic properties, and that he sold it with that understanding and belief.

In *Carroll* v. *State,* 63 Md., 551; *People* v. *Robey,* 52 Mich., 270, and the cases from Illinois, Arkansas, Georgia, West Virginia, Mississippi, and England, I find upon examination that the statutes involved in their decision *do not require the existence of a guilty intent or knowledge.*

The only case that comes anywhere near sustaining the contention of the State is that of *Redgate* v. *Haynes,* L. R. Q. B. Div., 89, but it will be noted that the statute punishes the "suffering" of gaming to be carried on upon the premises, under which it is possible that the negligence of the landlady might be held sufficient. BLACKBURN, J., however, used the following language: "I agree that the mere fact that gaming was carried on on her premises would not render her liable to be convicted, because that is not 'suffering' the gaming to be carried on, and if the Justices were of a different opinion, they were wrong; but I think if she purposely abstained from ascertaining whether gaming was going

on or not, or, in other words, connived at it, that this would be enough to make her liable." Of the same opinion was LUSH, J., the other sitting Judge, who said: "The only question here is whether there was any evidence of such connivance, and I think there was." Thus it appears that even this case seems to conflict with the principle in support of which it is cited; and among the other decisions referred to in the opinion (which, as I have observed, are founded upon statutes not requiring intent or *scienter*) there may be found some which conflict with the doctrine laid down by the Court. For instance, in the case of *Whitton* v. *The State of Mississippi*, the indictment was for selling to an intoxicated person, and the statute did not require a guilty knowledge or intent; the Court said that "it was certainly necessary that the defendant should either have known or have had good reason to believe that the person to whom the liquor was sold was intoxicated at the time of the sale." Another striking instance may be found in *Mullins* v. *Collins*, 9 Q. B., 292, of which I will speak hereafter. The passages cited from Wharton's Criminal Law are broad enough to sustain the position of the State, but I find that they are all based upon statutes which make the forbidden act indictable irrespective of a guilty knowledge or intent, and that in some of the statutes it is expressly provided (as in West Virginia and Illinois) that a sale to minors by any person, " by agent or otherwise," is an offence against the criminal law. In West Virginia it is also provided that a sale "by one person for another shall, in any prosecution for such sale, be taken and deemed a sale by both," etc.

In *State* v. *Mogler*, 47 Arkansas, much relied upon by the State, it is expressly said that the case was decided upon an act of the Legislature (1879), which changed the law to avoid the effect of the decision in the previous case of *State* v. *Cloud*, 36 Arkansas, wherein it was distinctly held that a bar-keeper could not be criminally liable for a sale made by his clerk in his absence, and without his authority.

In *Carroll* v. *The State*, 63 Md., *supra*, the Court said that "it is not necessary to allege *scienter*, because it is not made an ingredient by the statute that the thing shall be *knowingly and wilfully* done to make the violation of the statute an offence." It is manifest that if the statute had required such an ingredient, the Court would not have held the principal criminally liable. In *Barnes* v. *The State*, 19 Conn., 398, the defendant was indicted for selling liquor to a common drunkard, and it appeared that the sale was made by the clerks of the defendant, and it was held to be error to exclude evidence that the defendant had given his clerks specific directions to sell no liquor to common drunkards.

In *State* v. *Wool*, 86 N. C.. 708, the indictment was simply for an unlawful sale by a retailer (not by his agent) without the prescription of a physician, and no knowledge or intent is required by the statute to constitute the offence. The liability of the principal for the act of his agent did not arise in the case.

In *State* v. *McBrayer*, *supra*, the indictment was upon the statute now under consideration, but the sole point determined was that a physician who keeps on hand intoxicating liquors for the purpose of sale or profit was a "dealer," and that if he prescribed it and gave it to a minor, he would be guilty. The case was put upon the ground that ignorance of the law is no defence, and the decisions in *State* v. *Boyett*, 10 Ired., 336, and *State* v. *Pressnell*, 12 Ired., 103, for illegal voting under a mistake of law were cited. *State* v. *Dickens*, 1 Haywood, 407, was a case of extortion, and also a question of law, though it has been overruled by this Court, and a criminal intent is now required. *State* v. *Pritchard*, 107 N. C., 921.

*State* v. *Scoggins*, 107 N. C., 959, turned upon a question of evasion by an adult purchasing with the money of the minor, and then giving him the liquor. *State* v. *Lawrence*, 97 N. C., 492, simply decides that a father cannot authorize a sale to

his minor son. *State* v. *Neely*, Winst., 334, only decides that a licensee may employ an agent, and that the latter will be protected, but that his assignee will not be protected. It is said, *in passim*, " the master remaining liable for the acts and contracts of such clerk or agent done or made within the scope of his employment." This very clearly had no reference to the present or any other similar statute, as there were none such in existence at the time in this State.

In respect to the libel case of *Rex* v. *Gutch*, M. & M., 433, it is only necessary to refer to Bishop's Criminal Law (Vol. I, 219) to see that it lends no support to the contention of the State. The learned author says: " The master is never liable criminally for acts of his servant, done without his consent and against his express orders. The liability of a bookseller to be indicted for a libel, sold from his store by his clerk, is nearest to it. But the character of these cases has not always been understood. If carefully examined, they will be found to contain no new doctrine. * * * They make a sale in a master's store *high*, and unexplained, decisive evidence of his assent and co-operation; but they will not bear out the claim that a bookseller is liable, at all events, for a sale by his general clerk. Lord MANSFIELD said, in *Rex* v. *Almon*, 5 Bur., 2686 : ' The master may avoid the effect of the sale by showing that he was not privy nor assenting to it, nor encouraging it.' So, in Starkie, it is said that the defendant in such cases may rebut the presumption by showing that the libel was sold contrary to his orders or under circumstances negativing all privity on his part." See, also, 1 Hawk., C., 73; *Rex* v. *Walter*, 3 Esp. R., 21; *Gen'l* v. *Siddon*, 1 Crompt. & Jarvis, 220. In *Mullins* v. *Collins, supra,* cited by the Court, the distinction I have been endeavoring to draw is clearly recognized. The defendant was indicted for supplying liquor to a constable on duty, and it was held that the licensee was liable, although he had no knowledge of the act of his servant. ARCHIBOLD, J., said that " section 16 is one of a series

of clauses, headed offences against the public order, and must, therefore, be construed in the way most effective for maintaining public order.   It contains three subsections, the first of which creates offences which must be 'knowingly' committed, but the appellant has been convicted under the second subsection, where *the word 'knowingly' is omitted*. This seems to point to the conclusion that the licensed victualler will be liable for the act of his servant, although he himself has not knowingly committed an offence against the second subsection."   In view of these authorities, chiefly cited in the opinion, it would seem unnecessary to produce any others to sustain the position that where the statute makes the guilty knowledge of the dealer an essential ingredient of the offence, the principal without such knowledge cannot be convicted by the act of his servant.   Not a single authority has been produced where, under a similar statute, a conviction has ever been sustained under such circumstances, while most of the cases cited by the Court abundantly sustain the opposite view.

Mr. Bishop says (Bishop Stat. Crimes, 1022;  1 Bishop Crim. Law, 522, 523):  " Where the statute is silent as to the defendant's intent or knowledge, the indictment need not allege, or the government's evidence show, that he knew the fact; his being misled concerning it is a matter for him to set up in defence and prove.   Quite different are the law and procedure where the statute has the word " knowingly," or the like: knowledge there is an element in the crime, the indictment must allege it, and the evidence against the defendant must affirmatively establish its existence."   See, also, 1 Wharton, 297.   In *Hunter* v. *The State* (18 Tex., 444), the Court said that "knowledge of this fact (minority) by the defendant, at the time of the act, is as essential to constitute this offence as a fraudulent intent at the time of taking property is to constitute the crime of larceny."   It is hardly necessary to say anything further in support of what I conceive

to be so plain a proposition, and I will now cite a few of the numerous authorities which, in addition to those already referred to, bear directly upon the particular question before us. "Under the statutes forbidding the sale of intoxicating drinks without license, and the former enactments against selling goods to slaves without the consent of their masters (See *State* v. *Privett*, 4 Jones, 100), it is sufficient in defence that the sale was made by the defendant's clerk unauthorized either absolutely or by implication." 1 Bishop C. L., 220; *State* v. *Lawson*, 2 Bay., 360; *Ewing* v. *Thompson*, 13 Mo., 132; *Caldwell* v. *Sacra*, Litt. Sel. Cases, 118.

In *Commonwealth* v. *Nicholas*, 10 Met., 259, which was a prosecution for the unlawful sale of liquor, it was held that "if a sale of liquor is made by the servant, without the knowledge of the master, and really in opposition to his will, and in no way participated in, approved or countenanced by him, and this is clearly shown by the master, he ought to be acquitted." The Court said: "We are aware, as already intimated, the master is sometimes made responsible, civilly, for his servant's misconduct. The responsibility may grow out of an express or implied undertaking that the thing to be done shall be well done, or out of that great princple of vigilance imposed upon a master that he must see that his business is conducted so as not to injure others, or that his servants shall be duly attentive and prudent. But the master is never liable criminally for acts of his servants, done without his consent and against his express orders." This case is cited with approval in the late decision in *Commonwealth* v. *Stevens*, 151 Mass., 26 N. E. Rep., 992. So in *Hipp* v. *The State*, 2 Black., 149, it was held that an innkeeper was not liable for the selling of spirituous liquor to an intoxicated person by his bar-keeper, in his absence and without his knowledge. So in *Commonwealth* v. *Bryant*, 142 Mass., 463, it was held that an unlawful sale of intoxicating liquor by a servant in his master's shop, and in the regular

course of his master's lawful business, is not *prima facie* a
sale by the master.   The Court said that the "facts that a man
employs a servant to conduct a business expressly authorized
by statute, and that the servant makes the unlawful sale in
the course of it, do not necessarily overcome the presumption
of innocence merely because the business is liquor selling, and
may be carried beyond it." *Commonwealth* v. *Putnam*, 4 Gray,
16 ; *Commonwealth* v. *Dunbar*, 9 Gray, 298; *Barrington* v.
*Simpson*, 134 Mass., 169 ; 45 Am. Rep., 314; *Commonwealth*
v. *Hayes*, 145 Mass., 289.

In the American and English Enc., Vol. II, 711, *et seq* ,
many cases are collated, some of which I have been unable
to examine.   It is stated in the text that "a licensee to sell
intoxicating liquors is bound, at his peril, to see that the con-
ditions of the license are complied with by his servants or
agents, but to render a defendant liable for sales made by
agents or servants, a defendant's knowledge or consent must
be shown."   To the same effect are the cases of *People* v.
*Utter*, 44 Barb , 170 ; *Anderson* v. *State,* 22 Ohio, 305 ; *Com-
monwealth* v. *Nicholas*, 10 Met., 259 ; *Wetzter* v. *State*, 18 Ind.,
35 ; *Wreidst* v. *State*, 48 Ind., 579: *State* v. *Hayes*, 67 Iowa,
27 ; *State* v. *Shortell*, 93 Mo., 123 ; *Commonwealth* v. *Wachen-
darf*, 141 Mass., 170.   In the last case, the Court said: "It
would require a clear expression of the will of the Legisla-
ture to justify a construction of a penal statute which would
expose an innocent man to a disgraceful punishment for an
act of which he had no knowledge, which he did not in any
way take part in or authorize, but which he had forbidden."
When we consider that the cases cited are upon statutes
which, like those referred to in the opinion, do not require a
guilty knowledge or intent, and that they indicate very
clearly that the great weight of authority, even upon such
statutes, is against the contention of the State, and when we
further consider, as I have already observed, that not one
decision has been produced which dispenses with a guilty

knowledge or intent, where the law expressly requires it, I think it must be apparent that the doctrine of *respondeat superior* has, in this case, been extended beyond the limits of precedent, and with all deference, I will add beyond the well settled principles of the criminal law. It is said that any other ruling would lead to an evasion of the law in many instances, and that the principal should be held to such an accountability because of the trust reposed in him by reason of his selection by the County Commissioners as a fit person to retail intoxicating liquor. It must be remembered that the public is not without protection, as the agent or servant who makes an unlawful sale is liable to be indicted and punished. *State* v. *Wallace,* 94 N. C., 829. The possible evils resulting from a failure to hold an innocent principal guilty, is a matter which should be addressed to the lawmakers; and if they see fit to do so, they may enact laws similar to those in West Virginia, Arkansas, Maine, Illinois and other States, under which the principal is held to be chargeable with the guilty knowledge of the agent. It was because of the existence of the principle I am insisting upon that such laws were made, and that legislation was deemed necessary in this State in order to fasten a criminal liability upon the principal, is apparent from section 90, ch. 34, Rev. Code, in which it was expressly provided that in unlawful sales to slaves, the principal should be criminally liable for the act of his agent, unless he showed that the sale was made without his consent. Public policy may have much to do in the interpretation of statutory laws, but I do not see how it can control language, which is not only free from ambiguity and doubt, but has universally been held to be susceptible of but one meaning when used in criminal offences. If the policy to be subserved requires a conviction in a case like the present, it is very strange that such great pains should have been taken to defeat its object by explicitly requiring that the unlawful act should be accompanied with

a guilty knowledge.   The position of the State cannot rest upon public policy alone, but it must be based upon some *principle*, and this principle must necessarily be, that in criminal cases the actual or constructive knowledge of the agent is the knowledge of the principal.

The merchant whose clerk, against his instructions and without his knowledge, purchases cotton in the seed between the hours of sunset and sunrise (*The Code*, §§ 1043, 1046), must, upon this principle, be held guilty of a violation of the criminal law ; and far worse than this, if the clerk purchases goods, knowing them to have been stolen, the innocent merchant may be convicted and imprisoned in the State's prison for a long term of years.   It is a matter of public policy that the crime of larceny should be suppressed, but it would be startling, indeed, if the guilty knowledge which is required by the statute should be ignored on such a ground, and the most respectable merchants in the State exposed to the punishment of a felon.    *The Code*, § 1074.    The statute requires a guilty knowledge to constitute the offence of receiving, and I cannot see how the same language can be construed to mean actual knowledge in one case, and a constructive knowledge in the other.    It is said that the distinction consists in the fact that the dealer in liquors is selected by reason of his fitness to carry on that particular business, and therefore he must be held responsible for the acts of his servants, but it is submitted that such a reason cannot have the effect of overriding the *plain and unmistakable language of the law*, which is, in substance, the same in both cases.    Such considerations may be influential with the Legislature in order that the law may be amended so as to hold the principal responsible for his negligence in the selection of improper agents and for their unlawful conduct, but it cannot authorize a Court to ignore its explicit requirements.

It is further argued, that the act of the agent in selling to a minor makes out a *prima facie* case of knowledge, and

110 — 38

there being no evidence on the part of the agent in rebuttal, the principal must therefore be guilty. This is very true as to the agent, but it is a *petitio principii* to say that such constructive knowledge is the knowledge of the principal, as that is the very question we are called upon to determine. It is plain, from our statute, that the presumption of *scienter* arises only as against the person who does the selling, and the law has been careful to provide that such a person may rebut the presumption and show the truth of the transaction. If the law, then, is so careful as to the actual vendor, it would be strange, indeed, if it did not display some solicitude for one who had no knowledge whatever of the particular transaction. It must be evident that the Legislature never intended that anyone should be convicted under this law without being permitted to show his innocence, and if the agent who does the selling could rebut the *prima facie* case of guilty knowledge which is raised by his own act, it would be a hard measure, indeed, to deny the same privilege to one who is admittedly innocent both of the unlawful act and the guilty knowledge.

In providing that the unlawful sale should be *prima facie* evidence of knowledge, the law did not intend to dispense with the element of *scienter* as an ingredient of the crime. It simply shifted the burden of proof, reserving to the defendant the right to show his innocence. It was never intended, I think, to extend the *prima facie* case to one who did not commit the act, and at the same time put it in the power of the person who committed the act, either by neglect or connivance, to shut out all testimony whatever tending to show the absolute innocence of the party charged. I am very sure that the *prima facie* case applies only to the person making the sale; but if this is not true, and it is extended to the principal, why, pray, does not the right to rebut the *prima facie* case go along with it? It is said that the defendant has such a right, but it is to be restricted to

the rebuttal of the guilty knowledge of the agent alone, and that however innocent, in fact, the principal may be, he is precluded from showing it. Thus we have, as a result, the naked proposition that there can be such an anomaly as what may be termed an *irrebuttable constructive scienter*, when the plain language of the statute requires that the dealer shall not be convicted if he shows that he is without guilty knowledge.

It may be observed that the incongruity of the position is further illustrated by the fact that the record discloses that both of the clerks, who were indicted and tried with the defendant, were acquitted; and thus we have the case of a principal being convicted for the act of an agent who himself has been declared innocent.

Now, it may be that a person can be convicted who commands two others to commit an offence, and the proof shows that it must necessarily have been committed by one of them, although both must be acquitted because of the inability of the jury to find which of the two committed the crime; but where the principal is absent and the offence is committed contrary to his wishes and commands, and his guilt is asserted solely on the ground of agency, it would seem to present, at least, a novel ground-work upon which to build a case of constructive crime, it being impossible for the defendant to ascertain upon which agent the *prima facie* case, which he is required to rebut, has been imposed. The genius of free and constitutional government is opposed to constructive crime, and while I do not say it may not be warranted in cases of this character, where, in the interest of good morals, a great evil should be suppressed, I cannot sanction such a doctrine, when, as in this instance, the Legislature has not only failed to authorize, but, in my opinion, has expressly forbidden it. Ingenuity may be able to construct a plausible argument in support of the conviction, but I think it must be attended with difficulty, and especially must this

be so when the rule which requires all penal statutes to be construed strictly has always been considered in this State to be something more than a mere idle expression. The rule is founded upon the' great principles of the criminal law, and must be followed in this as well as in other cases. I can see no reason why the principle of the conviction in this case may not, as I have indicated, be extended to offences of a more serious character, and it is chiefly because of this possible evil that I have felt it my duty to state the grounds of my dissent at such length.

" Bad precedents," it is said, " are like arrows shot from a bow. They cannot be controlled after they have left the string. Their logical sequence often runs terribly away to consequences never dreamed of. * * * I distrust the social advantages promoted by decisions of this nature. *Timeo Danaos et dona ferentes.* They have the fair · semblance of handmaidens of morality. They may be wooden horses unwittingly drawn within the citadel of the Bill of Rights."

In conclusion, I will add that the defendant is also entitled to a new trial on the ground that his Honor charged the jury that if they believed that the witness bought of one of the clerks the defendant was guilty. There could be no *prima facie* case against anyone until the fact of minority was found, but notwithstanding this the guilt of the defendant was made to turn upon the simple fact of selling to the witness. There are no admissions in the case, and the charge of the Court in this particular was excepted to. The error is too plain for further elaboration, and thus the very foundation of this constructive crime is swept away. It may be said the refused instructions assumed the minority of the witness, but it surely cannot be insisted that every hypothesis contained in a refused instruction is to be construed into solemn admissions, and that the Judge, in charging the jury on the whole case, is to assume them to be true. Besides, it was equally necessary that the State should establish the fact that

the witness was unmarried, and not a word is said about this essential ingredient, either in the prayer for instructions or in the charge as given. For the reasons stated, I am of opinion that defendant has been improperly convicted, and that he is entitled to a new trial.

*Per curiam.*                                    Affirmed.